# IN THE SUPREME COURT OF IOWA

No. 15–2203

Filed March 9, 2018

**STATE OF IOWA,**

Appellee,

vs.

**RENE ZARATE,**

Appellant.

---

Appeal from the Iowa District Court for Buena Vista County, David A. Lester, Judge.

Defendant, a juvenile offender, challenges his sentence of life imprisonment with the possibility of parole after a minimum term of twenty-five years as cruel and unusual punishment under the Iowa and Federal Constitutions. **DISTRICT COURT SENTENCE VACATED AND CASE REMANDED.**

Alexander Smith and Benjamin Bergmann of Parrish Kruidenier Dunn Boles Gribble Gentry Brown & Bergmann L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Louis S. Sloven, Assistant Attorney General, for appellee.

Joseph Fraioli and Rita Bettis of ACLU of Iowa, Des Moines, for amicus curiae.

**ZAGER, Justice.**

The defendant, convicted of first-degree murder as a juvenile offender, challenges his sentence of life in prison with the possibility of parole after serving a minimum term of twenty-five-years confinement as determined by the district court. By means of a motion to correct an illegal sentence, the defendant challenges the sentencing scheme for juvenile offenders convicted of first-degree murder set forth in Iowa Code section 902.1(2) under the cruel and unusual punishment clause of the Iowa Constitution. He argues that both the sentencing options and the factors that the sentencing court is required to consider under Iowa Code section 902.1(2) are unconstitutional given the language of the Iowa Constitution and prior federal and state precedent regarding juvenile sentencing. Alternatively, he claims that Iowa Code section 902.1(2) is unconstitutional as applied to his resentencing because the district court allowed the circumstances of his offense to overwhelm the analysis in its resentencing decision. For the reasons set forth below, we find that the only portion of Iowa Code section 902.1(2) that is unconstitutional under the Iowa Constitution is section 902.1(2)(*a*)(1), which provides the district court with the option to sentence a juvenile offender convicted of murder in the first degree to life imprisonment without the possibility of parole. The remainder of Iowa Code section 902.1(2) is constitutional under the Iowa Constitution. However, we vacate Zarate's sentence and remand for resentencing consistent with this opinion and our opinion in *State v. Roby*, 897 N.W.2d 127 (Iowa 2017), which was decided subsequent to Zarate's resentencing.

## I. Facts and Procedural Background.

Rene Zarate moved with his family from Mexico to Iowa when he was about twelve years old. Zarate did not speak English and had below

average intellectual abilities. He struggled with behavioral issues in school after moving to Iowa, and he began to associate with members of a criminal street gang known as Surano 13. Zarate also started consuming alcohol and using drugs, including cocaine, methamphetamine, marijuana, and glue. He had frequent contact with law enforcement and first entered the juvenile justice system when he was about fourteen years old. As a teenager, Zarate was involved in various criminal acts including burglary, theft, and criminal mischief. Consequently, he spent time in juvenile detention and on house arrest. Zarate also failed to successfully complete his required probation.

On the evening of May 1, 1999, fifteen-year old Zarate and some friends were drinking alcohol together in violation of Zarate's probation conditions in a mobile home where Jorge Ramos rented a room. When Ramos arrived home in the early morning hours of May 2, he began to argue with one of Zarate's friends after Ramos refused the friend's request for Ramos to drink with them. Ramos subsequently took the phone from the living room and went to his bedroom. After Ramos took the phone, Zarate became worried that Ramos was going to call the police on him and his friends, which could negatively affect his probation. Zarate became upset and made multiple attempts to attack Ramos. First, Zarate tried to attack Ramos with a screwdriver. However, a friend was able to take the screwdriver away. Next, Zarate tried to attack Ramos with a hatchet, but a friend was also able to take the hatchet away. Finally, Zarate went to a bedroom, removed a fishing knife he found from a tackle box, and stabbed Ramos with the knife. Ramos managed to stumble into the living room before he fell on a mattress on the floor. At this point, Zarate's friends fled the mobile home. Zarate

followed Ramos to the living room and proceeded to stab Ramos a total of fifty times, resulting in his death.

After killing Ramos, Zarate kicked and spat on Ramos's body, laughing and calling Ramos names in Spanish. He then moved the body outside and covered it with blankets before attempting to get lighter fluid or gasoline from friends to burn the blankets and the body. When police officers arrived on the scene, Zarate initially lied to the police about his identity and provided them with false information before the police arrested him. After questioning, Zarate later confessed to murdering Ramos. On February 8, 2001, a jury convicted Zarate of murder in the first degree, a class "A" felony, in violation of Iowa Code section 707.2 (1999). Zarate was subsequently sentenced to mandatory life imprisonment without the possibility of parole pursuant to Iowa Code section 902.1(2).

In 2012, the United States Supreme Court decided *Miller v. Alabama,* 567 U.S. 460, 479, 132 S. Ct. 2455, 2469 (2012), in which it held a sentencing scheme providing for mandatory life imprisonment without the possibility of parole for juvenile offenders violates the Eighth Amendment's prohibition on cruel and unusual punishment. Additionally, the Court held that a sentencing court must make individualized sentencing decisions that consider the juvenile offender's age and age-related characteristics before imposing "the harshest possible penalty for juveniles" of a life sentence without the possibility of parole. *Id.* at 489, 132 S. Ct. at 2475.

Following *Miller,* the Governor commuted the sentences of Zarate and all other juvenile offenders in Iowa serving mandatory sentences of life without parole to sentences of sixty years without parole and with no credit for earned time. *See State v. Ragland,* 836 N.W.2d 107, 110–11

(Iowa 2013). Consequently, Zarate filed a Motion to Correct Illegal Sentence. After Zarate filed that motion, we decided *Ragland* in which we found that *Miller* applied retroactively and held that the Governor's commutations were *de facto* sentences of life without the possibility of parole that required the same individualized sentencing set forth in *Miller. Id.* at 119, 122. Therefore, juvenile offenders serving life sentences without parole were entitled to a resentencing hearing. *Id.* Zarate then filed a Supplemental Motion to Correct Illegal Sentence on March 7, 2014.

Prior to Zarate's resentencing hearing, the Iowa legislature passed a bill that the Governor signed into law changing Iowa Code section 902.1(2) under which Zarate was originally sentenced. *See* 2015 Iowa Acts ch. 15, § 1 (codified at Iowa Code § 902.1(2) (effective Apr. 24, 2015)). Under the revised law, a sentencing court has the option to sentence a juvenile offender convicted of first-degree murder to life imprisonment without the possibility of parole, life imprisonment with the possibility of parole after serving a minimum term of confinement as determined by the court, or life imprisonment with the immediate possibility of parole. Iowa Code § 902.1(2)(*a*)(1)–(3) (2016). Moreover, the law sets forth twenty-five sentencing factors for sentencing courts to consider in determining which of the aforementioned sentencing options to impose. *See id.* § 902.1(2)(*b*)(2)(a)–(v).

On June 3, 2015, the district court conducted a hearing concerning Zarate's supplemental motion to correct his illegal sentence and request for a resentencing hearing. At the hearing, Zarate argued that Iowa Code section 902.1(2) violates the Iowa Constitution's prohibition against cruel and unusual punishment under article I, section 17 because it takes away the district court's discretion to

determine sentences for juvenile offenders as required by *Miller* and *Ragland*. He also argued that the statute denies him a meaningful opportunity for release, even with the parole options, due to the existing statutes governing Iowa's parole system. In response, the State asserted the district court is required to follow Iowa Code section 902.1(2) in sentencing Zarate because that statute provides Zarate with individualized sentencing by virtue of the factors listed in Iowa Code section 902.1(2)(*b*)(2).

On December 9, the district court ruled that Iowa Code section 902.1(2) did not violate the cruel and unusual punishment clause of the Iowa Constitution. In doing so, the district court noted that neither *Miller* nor our holding in *State v. Lyle*, 854 N.W.2d 378 (Iowa 2014), prohibits sentencing juveniles to prison for the length of time the legislature sets forth for the crime, nor does either prohibit a legislatively imposed minimum time that juvenile offenders must serve in prison before becoming parole eligible.

Instead, the district court found that the precedent set forth in *Miller*, and our progeny of *Miller* cases, merely require a sentencing judge to follow an individualized process that allows for the consideration of mitigating circumstances related to the juvenile offender's age and youthful characteristics. The district court held Iowa Code section 902.1(2) complies with the individualized sentencing requirement by providing the sentencing court with options concerning the conditions placed on a term of life in prison for juvenile offenders convicted of first-degree murder. Further, the district court found Iowa Code section 902.1(2) provides the mandated individualized sentencing by requiring the sentencing court to consider the twenty-five factors listed in Iowa Code section 902.1(2)(*b*)(2)(a)–(v)—many of which, according to the

district court, seemingly have either been taken directly from *Miller* or fall within the parameters of *Miller*. Likewise, the district court found the inclusion of possible aggravating factors in the law is permissible so long as the sentencing court also considers the required mitigating factors. Consequently, the district court held Iowa Code section 902.1(2) is constitutional on its face and is in accord with both *Miller* and *Ragland*.

Zarate's resentencing hearing was held on December 18. Zarate requested a term-of-years sentence of thirty years with parole eligibility after a period of fifteen years despite acknowledging that this sentence would violate Iowa Code section 902.1(2). Meanwhile, the State asserted its belief that life without parole was still justifiable,[1] though it acknowledged that the district court could choose life with the possibility of parole. The State also asked the district court to impose a mandatory minimum term of imprisonment before allowing for parole eligibility. In imposing Zarate's sentence, the district court stated, "[Zarate's] request for a fixed period of 30 years with a minimum of 15 years I still believe is unconstitutional. I don't have the authority to do that" based on the sentencing options provided in section 902.1(2). The district court also found life without the possibility of parole would be an inappropriate sentence in Zarate's case.

The district court ultimately decided to resentence Zarate under Iowa Code section 902.1(2)(*a*)(2) to life imprisonment with the possibility of parole after a minimum term of imprisonment of twenty-five years with credit for time already served under his previously imposed illegal

---

[1]At the time of Zarate's resentencing, life without the possibility of parole was still a constitutional sentencing option. However, we have since found life without the possibility of parole for juvenile offenders is unconstitutional. *See State v. Sweet*, 879 N.W.2d 811, 839 (Iowa 2016).

sentence. In reaching this decision, the district court stated, "I have taken into consideration the 25 factors I'm now supposed to consider under the existing statute, and the circumstances, I guess is the terminology they now use." While the district court did not individually go through each factor, it did make statements about various circumstances that guided its decision. Specifically, the district court noted Zarate's age and involvement in the crime, the fact that Zarate did not seem to be a threat to the public or any other individual beyond his victim, Zarate's degree of participation in the crime, Zarate's intellectual and emotional capacity, his susceptibility to peer pressure, the violent aspect of the crime, his drug and alcohol abuse, and his acceptance of responsibility for the crime.

Finally, the district court stated,

> After considering all those foregoing factors, which I am for the record considering as mitigating factors just so we're all clear, after considering those factors along with your improved behavior since you've been in prison during the last 10 years . . . lead me to conclude that you are entitled not only to have an opportunity at parole, but also that opportunity should be available to you at a fixed point in time in the future. I've chosen that point of time to be approximately 10 years from now just to ensure that you serve what I believe should be the minimum period of time for somebody that takes the life of another individual, whether that person is a juvenile or an adult.

Zarate appealed, and we retained the appeal.

On appeal, Zarate presents three issues. First, whether Iowa Code section 902.1(2)(*a*)(1)–(3) violates article I, section 17 of the Iowa Constitution, which prohibits cruel and unusual punishment. Second, whether the sentencing factors enumerated in Iowa Code section 902.1(2)(*b*)(2)(a)–(v) violate article I, section 17 of the Iowa Constitution. Finally, if neither of these provisions is unconstitutional, whether

Zarate's resentencing was unconstitutional based on his claim that the district court allowed the circumstances of the crime to overwhelm the analysis, thereby preventing him from receiving a truly individualized sentence as is constitutionally required.

## II. Standard of Review.

We may review a challenge that a sentence is illegal at any time. *Lyle*, 854 N.W.2d at 382; *see also* Iowa R. Crim. P. 2.24(5)(*a*). While we generally review challenges to illegal sentences for correction of errors at law, we apply de novo review for an allegation of an unconstitutional sentence. *State v. Seats*, 865 N.W.2d 545, 553 (Iowa 2015). Zarate's first two challenges are categorical, so we apply de novo review. Finally, we review sentences that are within the statutory limits for an abuse of discretion, though this standard "is not forgiving of a deficiency in the constitutional right to a reasoned sentencing decision based on a proper hearing." *Roby*, 897 N.W.2d at 138.

## III. Analysis.

**A. State and Federal Jurisprudence on Cruel and Unusual Punishment Regarding Juvenile Sentencing.** The Eighth Amendment of the United States Constitution and article I, section 17 of the Iowa Constitution both prohibit cruel and unusual punishment. U.S. Const. amend. VIII; Iowa Const. art. I, § 17. Under both provisions, the right to be free from cruel and unusual punishment " 'flows from the basic "precept of justice that punishment for crime should be graduated and proportioned" ' to both the offender and the offense." *Miller*, 567 U.S. at 469, 132 S. Ct. at 2463 (quoting *Roper v. Simmons*, 543 U.S. 551, 560, 125 S. Ct. 1183, 1190 (2005)); *State v. Propps*, 897 N.W.2d 91, 98 (Iowa 2017). Over the past fifteen years, the United States Supreme Court has decided a trilogy of cases interpreting the Eighth Amendment's Cruel and

Unusual Punishment Clause in relation to juvenile sentencing. *See Miller*, 567 U.S. 460, 132 S. Ct. 2455; *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011 (2010); *Roper*, 543 U.S. 551, 125 S. Ct. 1183. Additionally, we have decided a number of recent cases in line with the Supreme Court's jurisprudence under the Iowa Constitution dealing with cruel and unusual punishment regarding juvenile sentencing. To analyze Zarate's argument under the Iowa Constitution's cruel and unusual punishment jurisprudence, we first review the federal and state jurisprudence necessary to give context to the analysis.

The Supreme Court's trilogy of juvenile sentencing cases began with its 2005 holding in *Roper* that the Eighth Amendment's Cruel and Unusual Punishment Clause prohibits the imposition of capital punishment on juvenile offenders. 543 U.S. at 560, 125 S. Ct. at 1190. In *Roper*, the Court noted the differences in maturity, responsibility, susceptibility to negative influences, control, and character development between adult and juvenile offenders that "render suspect any conclusion that a juvenile falls among the worst offenders." *Id.* at 569–70, 125 S. Ct. at 1195. Five years later, the Supreme Court decided *Graham*, holding a sentence of life without the possibility of parole for juveniles convicted of nonhomicide offenses violates the Eighth Amendment. 560 U.S. at 74, 130 S. Ct. at 2030. Finally, in 2012, the Supreme Court held in *Miller* that a mandatory sentence of life imprisonment without the possibility of parole for juvenile offenders violates the Eighth Amendment. 567 U.S. at 479, 132 S. Ct. at 2469. In doing so, the Court held that sentencing courts must make individualized sentencing decisions for juvenile offenders that consider their age and age-related characteristics before imposing "the harshest possible penalty for

juveniles" of a life sentence without the possibility of parole. *Id.* at 489, 132 S. Ct. at 2475.

In the wake of *Miller*, the Governor commuted the sentences of all juvenile offenders in Iowa serving mandatory sentences of life without parole to sentences of sixty years without parole and with no credit for earned time. *See Ragland*, 836 N.W.2d at 110–11. Consequently, in *Ragland*, we held that *Miller* applied retroactively and that the Governor's commutations were *de facto* sentences of life without the possibility of parole that required individualized sentencing as described in *Miller*. *Id.* at 119, 122. *Miller* and our subsequent decision in *Ragland* launched a series of cases regarding juvenile sentencing under the Iowa Constitution.

First, in *State v. Null*, we held that *Miller*'s individualized sentencing requirement applied to a 52.5-year sentence because "geriatric release" after a lengthy term-of-years sentence for a juvenile offender fails to provide the juvenile with any meaningful opportunity to demonstrate his or her maturity and rehabilitation. 836 N.W.2d 41, 70–71 (2013). Likewise, in *State v. Pearson*, we held that *Miller*'s individualized sentencing requirement applied under the Iowa Constitution to a minimum sentence of thirty-five years before parole eligibility for a juvenile offender convicted of nonhomicide offenses. 836 N.W.2d 88, 96 (Iowa 2013).

Further, in *Lyle*, we held all mandatory minimum prison sentences for juvenile offenders are unconstitutional under article I, section 17 of the Iowa Constitution and found that "the sentencing of juveniles according to statutorily required mandatory minimums does not adequately serve the legitimate penological objectives in light of the child's categorically diminished culpability." 854 N.W.2d at 400–01. We

also provided the following factors that a district court must use in determining whether the minimum period of incarceration without parole is warranted:

> (1) the age of the offender and the features of youthful behavior, such as "immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) the particular "family and home environment" that surround the youth; (3) the circumstances of the particular crime and all circumstances relating to youth that may have played a role in the commission of the crime; (4) the challenges for youthful offenders in navigating through the criminal process; and (5) the possibility of rehabilitation and the capacity for change.

854 N.W.2d at 404 n.10 (quoting *Miller*, 567 U.S. at 477–78, 132 S. Ct. at 2468).

In *State v. Louisell*, we reaffirmed

> that under both the United States Constitution and the Iowa Constitution, juveniles convicted of crimes must be afforded a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation"—if a sentencing judge, exercising discretion, determines parole should be available.

865 N.W.2d 590, 602 (Iowa 2015) (quoting *Graham*, 560 U.S. at 75, 130 S. Ct. at 2030). We also held that a fixed term-of-years sentence was not an option "[b]ecause there was no statutory authority for the determinate sentence" and "judges may only impose punishment authorized by the legislature within constitutional constraints." *Id.* at 598. Additionally, we declined to address Louisell's argument that her parole eligibility was illusory based on Iowa's low rate of parole-eligible offenders who had actually been granted parole, asserting that this argument was not ripe for us to decide. *Id.* at 601–02.

In *Seats*, we expounded upon the factors a district court should consider as part of its discretionary sentencing in cases where it could sentence a juvenile to life in prison without the possibility of parole for

first-degree murder. 865 N.W.2d at 556–57. These factors stem from our holding in *Lyle* and include the differences between children and adults, the family and home environment, the circumstances of the homicide offense, the role of substance abuse in the juvenile's offense, and the fact that juveniles are more capable of rehabilitation than adults. *Id.* at 555–57. Additionally, we stressed that "the presumption for any sentencing judge is that the judge should sentence juveniles to life in prison with the possibility of parole for murder unless the other factors require a different sentence." *Id.* at 555.

In *State v. Sweet*, we categorically banned sentencing juvenile offenders to life without the possibility of parole under article I, section 17 of the Iowa Constitution. 879 N.W.2d 811, 839 (Iowa 2016). We noted that the *Miller* individualized sentencing hearing is inadequate in the context of sentencing juvenile offenders to life without the possibility of parole because that sentence required the sentencer to "do the impossible, namely, to determine whether the offender is 'irretrievably corrupt' at a time when even trained professionals with years of clinical experience would not attempt to make such a determination." *Id.* at 837. Rather, the parole board, not the sentencer, is in the best position to determine whether the offender is incorrigibly corrupt. *Id.* at 839.

Finally, in *Roby*, we concluded article I, section 17 of the Iowa Constitution does not categorically prohibit imposing a minimum term of incarceration without the possibility of parole on a juvenile offender so long as the court only imposes it after considering relevant mitigating factors of youth. 897 N.W.2d at 143. We also sought to provide guidance on the *Lyle* sentencing factors, noting that they ordinarily work to mitigate punishment in order to help sentencing courts craft "a punishment that serves the best interests of the child and society." *Id.* at

144 (quoting *Lyle*, 854 N.W.2d at 402). Further, we reiterated the differences between children and adults in sentencing, asserting "[p]erceptions applicable to adult behavior cannot normally be used to draw conclusions from juvenile behavior." *Id.* at 147.

**B. Zarate's Categorical Challenges.** The court employs a two-step inquiry to a categorical challenge to a sentence. *See Lyle*, 854 N.W.2d at 386. First, we examine " 'objective indicia of society's standards, as expressed in legislative enactments and state practice' to determine whether there is a national consensus against the sentencing practice at issue." *Id.* (quoting *Graham*, 560 U.S. at 61, 130 S. Ct. at 2022). Second, we consider our controlling precedents and our interpretation of the Iowa Constitution's text, history, meaning, and purpose to guide our own independent judgment on the constitutionality of the challenged sentence. *Id.* As part of our independent judgment, we also evaluate whether the challenged sentencing practice serves legitimate penological goals, as well as "the culpability of the offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question." *Id.* (quoting *Graham*, 560 U.S. at 67, 130 S. Ct. at 2026).

1. *The constitutionality of Iowa Code section 902.1(2)(a)(1)–(3).* During the 2015 legislative session, the general assembly enacted and the Governor signed into law Senate File 448, which is codified at Iowa Code section 902.1. Iowa Code section 902.1(2)(*a*)(1)–(3) provides three sentencing options for juveniles convicted of first-degree murder:

> (1) Commitment to the director of the department of corrections for the rest of the defendant's life with no possibility of parole unless the governor commutes the sentence to a term of years.

(2) Commitment to the custody of the director of the department of corrections for the rest of the defendant's life with the possibility of parole after serving a minimum term of confinement as determined by the court.

(3) Commitment to the custody of the director of the department of corrections for the rest of the defendant's life with the possibility of parole.

Iowa Code § 902.1(2)(*a*)(1)–(3).

Zarate argues that Iowa Code section 902.1(2)(*a*)(1)–(3) is unconstitutional because it does not provide sentencing judges with the opportunity to sentence juvenile offenders convicted of first-degree murder to a term-of-years sentence. Although the sentencing statute provides the sentencing court with flexibility to choose between set sentencing options, Zarate argues that the statute does not go far enough in creating judicial discretion to fashion juvenile sentences. Additionally, Zarate argues the sentencing options under section 902.1(2)(*a*) are unconstitutional because they do not provide a meaningful opportunity for release under *Miller* and *Ragland* since life imprisonment with the possibility of parole is *a de facto* life sentence. Specifically, Zarate contends parole is merely illusory because the parole board is not required to annually review the status of an offender convicted of a class "A" felony, few inmates serving a life sentence with the possibility of parole have actually received parole, and

the passage of Senate File 448 and the Governor's commutation language make it clear that the legislature and [G]overnor do not intend to have a parole board that will consider the constitutional mitigating factors from *Null, Ragland, Lyle*, and *Miller*.

At the outset, we hold that Iowa Code section 902.1(2)(*a*)(1), which allows the sentencing court to sentence a juvenile offender to life imprisonment without the possibility of parole is unconstitutional based on our holding in *Sweet*. We categorically banned the sentence of life

imprisonment without the possibility of parole for all juvenile offenders in *Sweet,* holding this sentence violated article I, section 17 of the Iowa Constitution. 879 N.W.2d at 839. However, this unconstitutional portion of the statute does not render the rest of section 902.1(2)(*a*) unconstitutional.

"When parts of a statute or ordinance are constitutionally valid, but other discrete and identifiable parts are infirm, we may sever the offending portion from the enactment and leave the remainder intact." *Am. Dog Owners Ass'n v. City of Des Moines*, 469 N.W.2d 416, 418 (Iowa 1991) (per curiam). We "leave the valid parts in force on the assumption that the legislature would have intended those provisions to stand alone." *Breeden v. Iowa Dep't of Corr.*, 887 N.W.2d 602, 608 (Iowa 2016) (quoting Jacob Scott, *Codified Canons and the Common Law of Interpretation*, 98 Geo. L.J. 341, 384 (2010)); *see also* Iowa Code § 4.12 (codifying the severability doctrine). In this case, the rest of Iowa Code section 902.1(2)(*a*) is constitutional based on the following two-prong inquiry we apply to categorical challenges. Thus, Iowa Code section 902.1(2)(*a*)(2)–(3) remains valid and in force.

Beginning with the first prong of the analysis, an objective examination of legislative enactments and state practices demonstrates that there is not a national consensus against mandatorily sentencing juvenile offenders convicted of first-degree murder to life imprisonment with the immediate possibility of parole or life imprisonment with the possibility of parole after a set number of years. Instead, a survey of the juvenile sentencing laws of other states demonstrates a national trend in favor of sentencing juvenile offenders like Zarate to at least a sentence of life imprisonment with the possibility of parole after an established minimum term of confinement.

Five states have juvenile sentencing schemes that require courts to sentence juvenile offenders convicted of first-degree murder to at least life with the possibility of parole after serving a minimum term of confinement similar to the sentencing option listed in Iowa Code section 902.1(2)(*a*)(2).[2] Another ten states subject their juvenile offenders to the same mandatory life with the possibility of parole options as their convicted adult offenders, many of which require offenders to serve a minimum term of years before becoming parole eligible.[3] Further, rather than provide sentencing courts with the ability to craft any sentence they desire as Zarate contends is the only constitutional way to comply with *Miller* and our juvenile sentencing jurisprudence, a number of states have mandatory minimum sentences for juvenile homicide offenders.[4]

---

[2]Ala. Code § 13A-6-2 (Westlaw through 2017 Reg. Sess.); Ariz. Rev. Stat. Ann. § 13-751(A)(2) (Westlaw through 1st Reg. Sess. of 53rd Leg. (2017)); Ark. Code. Ann. § 5-4-104 (West, Westlaw through 2017 Reg. Sess. & 1st Extraordinary Sess.); La. Stat. Ann. § 15:574.4(E)(1)(a) (Westlaw through 2017 2d Extraordinary Sess.); N.C. Gen. Stat. Ann. § 15A-1340.19A (West, Westlaw through 2017 Reg. Sess.).

[3]Idaho Code Ann. § 18-4004 (West, Westlaw through 2017 1st Reg. Sess.); Md. Code Ann. Corr. Serv. § 7-301 (West, Westlaw through 2017 Reg. Sess.); Minn. Stat. Ann. § 243.05 (West, Westlaw through 2017 Reg. & 1st Spec. Sess.); N.D. Cent. Code Ann. § 12.1-32-01 (West, Westlaw through 2017 Reg. Sess.); Ohio Rev. Code Ann. § 2929.02(B)(1) (West, Westlaw through File 48 of 132d Gen. Assemb. (2017–2018)); Okla. Stat. Ann. tit. 21, § 701.9 (West, Westlaw through 1st Reg. Sess. & 1st Spec. Sess. of 56th Leg. (2017)); 13 R.I. Gen. Laws Ann. § 13-8-13(a) (West, Westlaw through ch. 480 of Jan. 2017 Sess.); S.C. Code Ann. § 16-3-20 (Westlaw through 2017 Sess.); Tenn. Code Ann. § 40-35-501(h)(1) (West, Westlaw through 2017 1st Reg. Sess.); Wis. Stat. Ann. § 973.014(1)(a)(1) (West, Westlaw through 2017 Act 135).

[4]*See, e.g.*, Alaska Stat. Ann. § 12.55.125(a) (West, Westlaw through 2017 1st Reg. Sess. through 4th Spec. Sess. of 30th Leg.) ("A defendant convicted of murder in the first degree or murder of an unborn child under AS 11.41.150(a)(1) shall be sentenced to a definite term of imprisonment of at least 30 years . . . ."); Del. Code Ann. tit. 11, § 4209A (West, Westlaw through 81 Laws 2018) ("Any person who is convicted of first-degree murder for an offense that was committed before the person had reached the person's eighteenth birthday shall be sentenced to a term of incarceration not less than 25 years . . . ."); Ind. Code Ann. § 35-50-2-3(a) (West, Westlaw through 2017 1st Reg. Sess.) ("A person who commits murder shall be imprisoned for a fixed term of between forty-five (45) and sixty-five (65) years, with the advisory sentence being fifty-five (55) years."); Me. Ann. Stat. tit. 17-A, § 1251 (Westlaw through 2017 1st Reg. Sess.

*See generally* Kallee Spooner & Michael S. Vaugh, *Sentencing Juvenile Offenders: A 50-State Survey*, 5 Va. J. Crim. L. 130, 146–50 (2017) (providing a detailed overview of the juvenile sentencing landscape post-*Miller*). While we have done away with automatic mandatory minimum sentences of imprisonment for juvenile offenders in Iowa, an objective examination of other legislative enactments and state practices demonstrates that there is a national consensus in favor of requiring juvenile offenders convicted of first-degree murder to serve a mandatory minimum term of confinement before becoming parole eligible.

Additionally, the decision of our legislature to implement Iowa Code section 902.1(2)(*a*) and provide the sentencing courts with greater discretion to determine when a juvenile offender serving life imprisonment with the possibility of parole can become parole eligible serves as objective indicia of Iowa's standards regarding the challenged sentencing practice. As we noted in *Lyle*, the court owes "deference to the legislature when it expands the discretion of the court in juvenile sentencing." 854 N.W.2d at 388. Unlike the cases we decide, which are limited to the record before us, "[t]he legislature is uniquely suited to identifying and adopting additional substantive and procedural

---

& 1st Spec. Sess. of 128th Leg.) ("A person convicted of the crime of murder shall be sentenced to imprisonment for life or for any term of years that is not less than 25."); Mo. Rev. Stat. Ann. § 565.033(1) (West, Westlaw through 2017 1st Reg. Sess. & 1st & 2d Extraordinary Sess. of 99th Gen. Assemb.) ("A person found guilty of murder in the first degree who was under the age of eighteen at the time of the commission of the offense shall be sentenced to a term of life without eligibility for probation or parole as provided in section 565.034, life imprisonment with eligibility for parole, or not less than thirty years and not to exceed forty years imprisonment."); Neb. Rev. Stat. Ann. § 28-105.02(1) (West, Westlaw through 2017 1st Reg. Sess.) ("Notwithstanding any other provision of law, the penalty for any person convicted of a Class 1A felony for an offense committed when such person was under the age of eighteen years shall be a maximum sentence of not greater than life imprisonment and a minimum sentence of not less than forty years' imprisonment.").

protections to further the constitutional recognition that 'children are different.' " *Roby*, 897 N.W.2d at 144 (quoting *Seats*, 865 N.W.2d at 555). Moreover, "[l]egislative judgments can be 'the most reliable objective indicators of community standards for purposes of determining whether a punishment is cruel and unusual.' " *Lyle*, 854 N.W.2d at 388 (quoting *State v. Bruegger*, 773 N.W.2d 862, 873 (Iowa 2009)).

Here, the legislative decision to require mandatory life imprisonment with the possibility of parole, and to expand the discretion of sentencing courts by allowing them to make individualized determinations on when a juvenile offender convicted of first-degree murder is parole eligible, speaks to a consensus in Iowa in favor of the challenged sentencing practice. The legislature's recognition of the need for some discretion in the juvenile sentencing process comports with our prior holdings dealing with the issue of juvenile sentencing in the aftermath of *Miller*. Iowa Code section 902.1(2)(*a*)(2)–(3) allows sentencing courts to craft individualized sentences for each juvenile offender so long as the juvenile offender is first sentenced to life imprisonment with some option for parole eligibility.

As the second step in our inquiry, we analyze the Iowa Constitution's cruel and unusual punishment clause to determine if the sentencing options at issue violate the cruel and unusual punishment clause in light of its text, meaning, purpose, and history. "We seek to interpret our constitution consistent with the object sought to be obtained at the time of adoption as disclosed by the circumstances." *Chiodo v. Section 43.24 Panel*, 846 N.W.2d 845, 851 (Iowa 2014). However, originalism may not be the best guide for interpreting our constitution's cruel and unusual punishment clause in light of the changes to juvenile sentencing. Interpreting our constitution based on

our founders' intent would not support a categorical ban on life imprisonment without the possibility of parole eligibility because juveniles over the age of fourteen were tried and sentenced as adults when our constitution was adopted. *See Lyle*, 854 N.W.2d at 390.

Nonetheless, other decisions in our history similarly point to the constitutionality of the sentencing practice at issue. Zarate's argument that the statute is unconstitutional because it prevents a term-of-years sentence seeks to expand our categorical ban on mandatory minimum sentencing schemes in *Lyle* to an area of the law that we expressly stated was not included in the categorical ban. As we stated in *Lyle*, the categorical ban on mandatory minimums for juvenile offenders does not "prohibit the legislature from imposing a minimum time that youthful offenders must serve in prison before being eligible for parole." *Id.* at 403. We reiterated this again in *Roby*, holding there was no national or local consensus against imposing a minimum prison sentence on youthful offenders before they can become parole eligible, and "in our independent judgment article I, section 17 does not yet require abolition of the practice." 897 N.W.2d at 143. Rather, our cruel and unusual punishment clause simply requires an individualized sentencing process instead of a one-size-fits-all sentencing scheme before the mandatory prison sentences can be applied. *Id.* Iowa Code section 902.1(2) meets this requirement because it instructs sentencing courts to employ an individualized review of each juvenile offender's situation—including a consideration of the factors mandated in *Miller*, *Lyle*, and *Seats*—then allows the sentencing court to form a unique sentence with regards to parole eligibility for each juvenile offender.

Further, Iowa Code section 902.1(2)(*a*)(2)–(3)'s sentencing options align with the United States Supreme Court and this court's recognition

of "a fundamental and virtually inexorable difference between juveniles and adults for the purposes of punishment." *Lyle*, 854 N.W.2d at 393. This difference is reflected throughout Iowa Code section 902.1(2)(*a*)(2)–(3), beginning with its different sentencing options for juveniles from adults. While Iowa law mandates life without parole for adults who commit first-degree murder, the sentencing options provided in section 902.1(2) provide no mandatory minimum period of incarceration for juvenile offenders who commit first-degree murder. *Compare* Iowa Code § 902.1(1), *with id.* § 902.1(2)(*a*)(2)–(3). Moreover, in contrast to the mandatory life without parole for adult offenders who commit first-degree murder, juvenile offenders convicted of the same crime are provided with an individualized sentencing hearing that takes into account their youth and a number of other mitigating factors that provide juveniles with more leniency in the sentencing process. *Compare id.* § 902.1(1), *with id.* § 902.1(2)(*b*)(2)(a)–(v).

In addition to our understanding and interpretation of the Iowa Constitution, we also consider whether the challenged sentencing practice serves legitimate penological goals and the culpability of the offender at issue. *Lyle*, 854 N.W.2d at 386. These goals include rehabilitation, retribution, deterrence, and incapacitation. *State v. Oliver*, 812 N.W.2d 636, 646 (Iowa 2012). While we have noted that penological justifications beyond rehabilitation carry less weight in the juvenile sentencing context, they still have some relevance and purpose in the sentencing process. *See Roby*, 897 N.W.2d at 154 (Zager, J., dissenting); *Lyle*, 854 N.W.2d at 399–400. Even so, our juvenile sentencing jurisprudence focuses heavily on the goal of rehabilitation over all others due to the increased capacity of juveniles to reform in comparison to adults. *See Roby*, 897 N.W.2d at 147 (majority opinion).

The possibility of parole options presented in Iowa Code section 902.1(2)(*a*)(2)–(3) align with our focus on rehabilitation and allow sentencing judges to acknowledge the fundamental concept of our juvenile sentencing jurisprudence that children are different from adults and should be treated differently due to their increased potential for rehabilitation. Consequently, sentencing courts can immediately declare a rehabilitated juvenile offender eligible for parole, or they can consider the changes a juvenile offender has made and subsequently subject him or her to a term of imprisonment first to ensure that these changes are permanent.

Furthermore, the statute's sentencing options promote other legitimate penological goals like retribution, deterrence, and incapacitation. For example, in *Roby*, we stated, "it may be appropriate retribution to incarcerate a juvenile for a short time without the possibility of parole. Additionally, a sentencing judge could properly conclude a short term of guaranteed incarceration is necessary to protect the public." *Id.* at 142. Iowa Code section 902.1(2)(*a*)(2)–(3) aligns with our statements about penological goals in *Roby* by allowing sentencing courts to subject juvenile offenders convicted of first-degree murder to a term of imprisonment before becoming parole eligible that considers the nature of the crime as one of many factors in the sentencing process. Requiring a sentencing court to sentence a juvenile offender convicted of first-degree murder to a definite term of years as Zarate requests, as opposed to life imprisonment with the possibility of parole, would hinder the sentencing court's ability to protect society from offenders who show signs of recidivism that may require incapacitation until a parole board determines the offender's rehabilitation.

Finally, Zarate's claim that Iowa Code section 902.1(2) denies juvenile offenders convicted of first-degree murder a meaningful opportunity for parole is not ripe for adjudication because it is merely speculative. "A case is ripe for adjudication when it presents an actual, present controversy, as opposed to one that is merely hypothetical or speculative." *State v. Wade*, 757 N.W.2d 618, 627 (Iowa 2008). The ripeness doctrine exists to avoid premature adjudication of issues that would entangle the courts in abstract disagreements over administrative policies. *Id.* For example, in *Louisell,* we declined on ripeness grounds to rule on the opportunity for meaningful release for parole eligible juvenile offenders in which the juvenile offender argued the opportunity was simply illusory due to the low number of juvenile offenders actually granted parole. 865 N.W.2d at 601–02. Yvette Louisell made this argument before being denied parole, and even after Louisell became eligible for parole as a result of our remand order, the question of her meaningful opportunity for release under a sentence of life imprisonment with the possibility of parole was still not ripe because she had not been denied parole in order to claim a legal violation. *Id.*

The same ripeness issue occurs in this case. Similar to *Louisell*, Zarate's claim that life imprisonment with the possibility of parole for juvenile offenders under section 902.1(2)(*a*)(2)–(3) does not present a meaningful opportunity for release is speculative. Much of Zarate's argument focuses on the alleged intentions of the specific legislature that passed Iowa Code section 902.1(2) and the Governor, who signed the bill into law. Zarate claims the legislature and Governor have an improper motive and intent to keep juvenile homicide offenders incarcerated, which denies juvenile offenders convicted of first-degree murder a meaningful opportunity for parole because the Governor and legislature

have the power to appoint and confirm the parole board members under Iowa Code section 904A.3. However, parole board members must meet certain qualifications and are appointed for fixed terms. *See* Iowa Code §§ 904A.1–.2. Parole decisions are subject to legal standards. *See id.* §§ 906.3–.4. Zarate has provided no basis for us to conclude that the parole board will fail to follow the law in a case that is presented to it, including his own.

To decide the issue of whether Iowa Code section 902.1(2) denies juvenile offenders with a meaningful opportunity for release when Zarate has not yet become parole eligible, or been denied parole, would require us to speculate about the actions of the parole board in the future. This abstract decision is not within our purview. Consequently, we reserve the issue of whether life imprisonment with the possibility of parole provides juvenile offenders who are eligible for immediate parole with a meaningful opportunity for release for another day.

2. *The constitutionality of sentencing factors under Iowa Code section 902.1(2).* Under Iowa Code section 902.1(2)(*b*)(2), in determining what sentence to impose,

> the [sentencing] court shall consider all circumstances including but not limited to the following:
>
> (a) The impact of the offense on each victim, as defined by section 915.10, through the use of a victim impact statement, as defined in section 915.10, under any format permitted by section 915.13. The victim impact statement may include comment on the sentence of the defendant.
>
> (b) The impact of the offense on the community.
>
> (c) The threat to the safety of the public or any individual posed by the defendant.
>
> (d) The degree of participation in the murder by the defendant.

(e) The nature of the offense.

(f) The defendant's remorse.

(g) The defendant's acceptance of responsibility.

(h) The severity of the offense, including any of the following:

(i) The commission of the murder while participating in another felony.

(ii) The number of victims.

(iii) The heinous, brutal, cruel manner of the murder, including whether the murder was the result of torture.

(i) The capacity of the defendant to appreciate the criminality of the conduct.

(j) Whether the ability to conform the defendant's conduct with the requirements of the law was substantially impaired.

(k) The level of maturity of the defendant.

(l) The intellectual and mental capacity of the defendant.

(m) The nature and extent of any prior juvenile delinquency or criminal history of the defendant, including the success or failure of previous attempts at rehabilitation.

(n) The mental health history of the defendant.

(o) The level of compulsion, duress, or influence exerted upon the defendant, but not to such an extent as to constitute a defense.

(p) The likelihood of the commission of further offenses by the defendant.

(q) The chronological age of the defendant and the features of youth, including immaturity, impetuosity, and failure to appreciate risks and consequences.

(r) The family and home environment that surrounded the defendant.

(s) The circumstances of the murder including the extent of the defendant's participation in the conduct and the way familial and peer pressure may have affected the defendant.

(t) The competencies associated with youth, including but not limited to the defendant's inability to deal with peace officers or the prosecution or the defendant's incapacity to assist the defendant's attorney in the defendant's defense.

(u) The possibility of rehabilitation.

(v) Any other information considered relevant by the sentencing court.

Iowa Code § 902.1(2)(*b*)(2)(a)–(v).

Zarate argues that the sentencing factors found in Iowa Code section 902.1(2)(*b*)(2)(a)–(v) are unconstitutional because they require a sentencing court to consider factors beyond the mitigating factors established in *Miller*. Zarate is especially concerned that a sentencing court could weigh aggravating factors more heavily than mitigating factors despite the fact that the statute does not give certain factors more weight than others. We decline Zarate's request for us to hold that the sentencing factors set forth in section 902.1(2)(*b*)(2)(a)–(v) are categorically unconstitutional. However, we do agree with Zarate that the use of the factors must comport with our juvenile sentencing jurisprudence in that the five factors set forth in *Lyle* must be considered as mitigating factors in the sentencing process. *See Lyle*, 854 N.W.2d at 404 n.10. We also hold that the district court's consideration of any potential aggravating factors set forth in section 902.1(2)(*b*)(2)(a)–(v) shall align with our juvenile sentencing jurisprudence so as not to overwhelm the mitigating factors associated with youth, especially the five factors of youth set forth in *Lyle.*

Under the first prong of our two-prong inquiry to a categorical challenge, an objective examination of legislative enactments and state practices demonstrates that there is a growing consensus toward enumerating set factors for sentencing courts to consider with regard to sentencing juvenile offenders convicted of first-degree murder. Similar to

Iowa's juvenile sentencing framework, nine other states have implemented a juvenile sentencing framework to comply with *Miller* that lists related, if not identical, sentencing factors to Iowa's for a sentencing court to consider when sentencing juvenile offenders convicted of first-degree murder.[5]

---

[5]*See* Fla. Stat. Ann. § 921.1401(2)(a–j) (West, Westlaw through 2017 1st Reg. Sess. & Spec. "A" Sess. of 25th Leg.) ("In determining whether life imprisonment or a term of years equal to life imprisonment is an appropriate sentence, the court shall consider factors relevant to the offense and the defendant's youth and attendant circumstances, including, but not limited to: (a) [t]he nature and circumstances of the offense committed by the defendant; (b) [t]he effect of the crime on the victim's family and on the community; (c) [t]he defendant's age, maturity, intellectual capacity, and mental and emotional health at the time of the offense; (d) [t]he defendant's background, including his or her family, home, and community environment; (e) [t]he effect, if any, of immaturity, impetuosity, or failure to appreciate risks and consequences on the defendant's participation in the offense; (f) [t]he extent of the defendant's participation in the offense; (g) [t]he effect, if any, of familial pressure or peer pressure on the defendant's actions; (h) [t]he nature and extent of the defendant's prior criminal history; (i) [t]he effect, if any, of characteristics attributable to the defendant's youth on the defendant's judgment; (j) [t]he possibility of rehabilitating the defendant."); 730 Ill. Comp. Stat. 5/5-4.5-105(a)(1–9) (West, Westlaw through P.A. 100-578 of 2018 Reg. Sess.) ("[W]hen a person commits an offense and the person is under 18 years of age at the time of the commission of the offense, the court, at the sentencing hearing conducted under Section 5-4-1, shall consider the following additional factors in mitigation in determining the appropriate sentence: (1) the person's age, impetuosity, and level of maturity at the time of the offense, including the ability to consider risks and consequences of behavior, and the presence of cognitive or developmental disability, or both, if any; (2) whether the person was subjected to outside pressure, including peer pressure, familial pressure, or negative influences; (3) the person's family, home environment, educational and social background, including any history of parental neglect, physical abuse, or other childhood trauma; (4) the person's potential for rehabilitation or evidence of rehabilitation, or both; (5) the circumstances of the offense; (6) the person's degree of participation and specific role in the offense, including the level of planning by the defendant before the offense; (7) whether the person was able to meaningfully participate in his or her defense; (8) the person's prior juvenile or criminal history; and (9) any other information the court finds relevant and reliable, including an expression of remorse, if appropriate. However, if the person on advice of counsel chooses not to make a statement, the court shall not consider a lack of an expression of remorse as an aggravating factor."); La. Code Crim. Proc. Ann. art. 878.1(C) ("At the [juvenile sentencing] hearing, the prosecution and defense shall be allowed to introduce any aggravating and mitigating evidence that is relevant to the charged offense or the character of the offender, including but not limited to the facts and circumstances of the crime, the criminal history of the offender, the offender's level of family support, social history, and such other factors as the court may deem relevant."); Mo. Ann. Stat. § 565.033(2) ("When assessing punishment in all first degree

murder cases in which the defendant was under the age of eighteen at the time of the commission of the offense or offenses, the judge in a jury-waived trial shall consider, or the judge shall include in instructions to the jury for it to consider, the following factors: (1) [t]he nature and circumstances of the offense committed by the defendant; (2) [t]he degree of the defendant's culpability in light of his or her age and role in the offense; (3) [t]he defendant's age, maturity, intellectual capacity, and mental and emotional health and development at the time of the offense; (4) [t]he defendant's background, including his or her family, home, and community environment; (5) [t]he likelihood for rehabilitation of the defendant; (6) [t]he extent of the defendant's participation in the offense; (7) [t]he effect of familial pressure or peer pressure on the defendant's actions; (8) [t]he nature and extent of the defendant's prior criminal history, including whether the offense was committed by a person with a prior record of conviction for murder in the first degree, or one or more serious assaultive criminal convictions; (9) [t]he effect of characteristics attributable to the defendant's youth on the defendant's judgment; and (10) [a] statement by the victim or the victim's family member . . . ."); Neb. Rev. Stat. Ann. § 28-105.02(2) (In determining the sentence of a juvenile offender convicted of a Class 1A felony, "the court shall consider mitigating factors which led to the commission of the offense. The convicted person may submit mitigating factors to the court, including, but not limited to: (a) [t]he convicted person's age at the time of the offense; (b) [t]he impetuosity of the convicted person; (c) [t]he convicted person's family and community environment; (d) [t]he convicted person's ability to appreciate the risks and consequences of the conduct; (e) [t]he convicted person's intellectual capacity; and (f) [t]he outcome of a comprehensive mental health evaluation of the convicted person conducted by an adolescent mental health professional licensed in this state. The evaluation shall include, but not be limited to, interviews with the convicted person's family in order to learn about the convicted person's prenatal history, developmental history, medical history, substance abuse treatment history, if any, social history, and psychological history."); Nev. Rev. Stat. Ann. § 176.017 (West, Westlaw through 79th Reg. Sess. (2017)) ("If a person is convicted as an adult for an offense that the person committed when he or she was less than 18 years of age, in addition to any other factor that the court is required to consider before imposing a sentence upon such a person, the court shall consider the differences between juvenile and adult offenders, including, without limitation, the diminished culpability of juveniles as compared to that of adults and the typical characteristics of youth."); N.C. Gen. Stat. Ann. § 15A-1340.19B(c)(1)–(9) (West, Westlaw through 2017 Reg. Sess.) ("The defendant or the defendant's counsel may submit mitigating circumstances to the court, including, but not limited to, the following factors: (1) [a]ge at the time of the offense; (2) [i]mmaturity; (3) [a]bility to appreciate the risks and consequences of the conduct; (4) [i]ntellectual capacity; (5) [p]rior record; (6) [m]ental health; (7) [f]amilial or peer pressure exerted upon the defendant; (8) [l]ikelihood that the defendant would benefit from rehabilitation in confinement; (9) [a]ny other mitigating factor or circumstance."); W. Va. Code Ann. § 61-11-23(c)(1)– (15) (West, Westlaw through 2017 3d Extraordinary Sess.) ("In addition to other factors required by law to be considered prior to the imposition of a sentence, in determining the appropriate sentence to be imposed on a person who has been transferred to the criminal jurisdiction of the court pursuant to section ten, article five, chapter forty-nine of this code and who has been subsequently tried and convicted of a felony offense as an adult, the court shall consider the following mitigating circumstances: (1) [a]ge at the time of the offense; (2) [i]mpetuosity; (3) [f]amily and community environment;

Likewise, the decision of our legislature to enumerate sentencing factors under Iowa Code section 902.1(2)(*b*)(2), and provide the sentencing courts with a plethora of factors to allow for greater discretion in crafting a juvenile sentence, serves as objective indicia of Iowa's standards regarding the challenged sentencing factors. As we noted previously, the legislature is entitled to deference when it expands the court's discretion in the juvenile sentencing realm. *Lyle,* 854 N.W.2d at 388. Further, the legislature is in the best position to identify and adopt legal protections that advance our constitutional recognition that "children are different." *Roby,* 897 N.W.2d at 144 (quoting *Seats,* 865 N.W.2d at 555).

With regard to the second factor, examining our controlling precedents and interpretations of the Iowa Constitution's text, history, meaning, and purpose, an examination of the sentencing factors enumerated in Iowa Code section 902.1(2)(*b*)(2)(a)–(v) supports our

---

(4) [a]bility to appreciate the risks and consequences of the conduct; (5) [i]ntellectual capacity; (6) [t]he outcomes of a comprehensive mental health evaluation conducted by [a] mental health professional licensed to treat adolescents in the State of West Virginia: Provided, that no provision of this section may be construed to require that a comprehensive mental health evaluation be conducted; (7) [p]eer or familial pressure; (8) [l]evel of participation in the offense; (9) [a]bility to participate meaningfully in his or her defense; (10) [c]apacity for rehabilitation; (11) [s]chool records and special education evaluations; (12) [t]rauma history; (13) [f]aith and community involvement; (14) [i]nvolvement in the child welfare system; and (15) [a]ny other mitigating factor or circumstances.); *Ex parte Henderson,* 144 So. 3d 1262, 1283–84 (Ala. 2013) ("We hold that a sentencing hearing for a juvenile convicted of a capital offense must now include consideration of: (1) the juvenile's chronological age at the time of the offense and the hallmark features of youth, such as immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile's diminished culpability; (3) the circumstances of the offense; (4) the extent of the juvenile's participation in the crime; (5) the juvenile's family, home, and neighborhood environment; (6) the juvenile's emotional maturity and development; (7) whether familial and/or peer pressure affected the juvenile; (8) the juvenile's past exposure to violence; (9) the juvenile's drug and alcohol history; (10) the juvenile's ability to deal with the police; (11) the juvenile's capacity to assist his or her attorney; (12) the juvenile's mental-health history; (13) the juvenile's potential for rehabilitation; and (14) any other relevant factor related to the juvenile's youth.").

decision that the statutory factors comport with our juvenile sentencing jurisprudence and the Iowa Constitution. In *Seats*, we expounded upon the five youth-related characteristics required under *Miller* and *Lyle*, holding that a sentencing court must consider the factors as "mitigating, not aggravating" when sentencing a juvenile offender. *Seats*, 865 N.W.2d at 555–57. In *Roby*, we again endorsed the use of these factors, noting that they "identify the primary reasons most juvenile offenders should not be sentenced without parole eligibility," and they "must not normally be used to impose a minimum sentence of incarceration without parole unless expert evidence supports the use of the factors to reach such a result." 897 N.W.2d at 147. A comparison of the *Lyle* factors we discussed in greater length in *Seats* and *Roby,* to those in Iowa Code section 902.1(2)(*b*)(2), demonstrates the statutory factors' alignment with our juvenile sentencing jurisprudence. *Cf. Sweet*, 879 N.W.2d at 840 (Cady, C.J., concurring specially) (noting these factors "addressed the constitutional deficiency identified in *Miller* and in our cases that followed").

The first *Lyle* factor requires a sentencing court to consider "the age of the offender and the features of youthful behavior, such as 'immaturity, impetuosity, and failure to appreciate risks and consequences.'" 854 N.W.2d at 404 n.10 (quoting *Miller*, 567 U.S. at 477–78, 132 S. Ct. at 2468). In *Seats*, we asserted this consideration requires the sentencing judge to recognize that "children are constitutionally different from adults." 865 N.W.2d at 556. In *Roby,* we elaborated further, stating this factor allows for the introduction of evidence at sentencing that speaks to the juvenile's "maturity, deliberation of thought, and appreciation of risk-taking" and "is most meaningfully applied when based on qualified professional assessments

of the offender's decisional capacity." 897 N.W.2d at 145. Similarly, the statutory factors require the sentencing judge to evaluate "[w]hether the ability to conform the defendant's conduct with the requirements of the law was substantially impaired," "[t]he level of maturity of the defendant," "[t]he intellectual and mental capacity of the defendant," "[t]he level of compulsion, duress, or influence exerted upon the defendant," "[t]he chronological age of the defendant and the features of youth, including immaturity, impetuosity, and failure to appreciate the risks and consequences," the effect of peer pressure on the defendant, and "[t]he competencies associated with youth, including but not limited to the defendant's inability to deal with peace officers or the prosecution or the defendant's incapacity to assist the defendant's attorney in the defendant's defense." Iowa Code § 902.1(2)(*b*)(2)(j)–(l), (o), (q), (s).

Second, *Lyle* requires a sentencing judge to consider the juvenile's family and home environment. 854 N.W.2d at 404 n.10. In *Seats*, we explained that this factor requires review of "any information regarding childhood abuse, parental neglect, personal and family drug or alcohol abuse, prior exposure to violence, lack of parental supervision, lack of an adequate education, and the juvenile's susceptibility to psychological or emotional damage." 865 N.W.2d at 556. Further, in *Roby*, we noted this factor "is not limited to extremely brutal or dysfunctional home environments, but considers the impact of all circumstances and all income and social backgrounds." 897 N.W.2d at 146. The statutory factors comply with our caselaw by requiring sentencing judges to consider the "mental health history of the defendant," "[t]he family and home environment that surrounded the defendant," and "[t]he circumstances of the murder including the extent of the defendant's

participation in the conduct and the way familial and peer pressure may have affected the defendant." Iowa Code § 902.1(2)(*b*)(2)(n), (r)–(s).

Third, under *Lyle*, the sentencing judge must consider "the circumstances of the particular crime and all circumstances relating to youth that may have played a role in the commission of the crime." 854 N.W.2d at 404 n.10. With regard to homicide offenses, we stated that this requires the consideration of "the circumstances of the homicide offense, including the extent of [the juvenile's] participation in the conduct and the way familial and peer pressures may have affected him." *Seats*, 865 N.W.2d at 556 (alteration in original) (quoting *Miller*, 567 U.S. at 477, 132 S. Ct. at 2468). Also, in *Roby*, we noted that "[t]he aggravating circumstances of a crime that suggest an adult offender is depraved may only reveal a juvenile offender to be wildly immature and impetuous." 897 N.W.2d at 146. Thus, "the circumstances of the crime do not necessarily weigh against mitigation when the crime caused grave harm or involved especially brutal circumstances." *Id.* In accord with these holdings, Iowa Code section 902.1(2)(*b*)(2)(r)–(s) requires sentencing judges to consider the circumstances of the crime and the effects of familial and peer pressure. Moreover, comparable to our holding in *Seats*, the statute also requires sentencing judges to consider "[t]he degree of participation in the murder by the defendant," "[t]he nature of the offense," "[t]he severity of the offense, including any of the following: (i) [t]he commission of the murder while participating in another felony[,] (ii) [t]he number of victims, [and] (iii) [t]he heinous, brutal, cruel manner of the murder, including whether the murder was the result of torture." Iowa Code § 902.1(2)(*b*)(2)(d)–(e), (h)–(l).

Fourth, *Lyle* requires the sentencing court to consider "the challenges of youthful offenders in navigating through the criminal

process." 854 N.W.2d at 404 n.10. In *Roby*, we explained this factor "mitigates against punishment because juveniles are generally less capable of navigating through the criminal process than adult offenders," which can affect the juvenile's "general competency to stand trial or relate more specifically to cognitive or other incapacities to withstand police interrogation." 897 N.W.2d at 146–47. As noted previously, the statute takes this into consideration by requiring the sentencing judge to examine "[t]he competencies associated with youth, including but not limited to the defendant's inability to deal with peace officers or the prosecution or the defendant's incapacity to assist the defendant's attorney in the defendant's defense." Iowa Code § 902.1(2)(*b*)(2)(t).

Finally, *Lyle* mandates the sentencing judge to consider "the possibility of rehabilitation and capacity for change." 854 N.W.2d at 404 n.10. We explained in *Roby* that this factor ordinarily supports mitigation because juveniles are more capable of rehabilitation. 897 N.W.2d at 147. Iowa Code section 902.1(2) does this by requiring a sentencing judge to consider "[t]he nature and extent of any prior juvenile delinquency or criminal history of the defendant, including the success or failure of previous attempts at rehabilitation," "[t]he likelihood of the commission of further offenses by the defendant," and "[t]he possibility of rehabilitation." Iowa Code § 902.1(2)(*b*)(2)(m), (p), (u).

Despite these similarities, Zarate argues the statutory factors are unconstitutional because they do not explicitly state that the sentencing court must treat these factors as mitigating rather than aggravating. We agree that the sentencing court must treat the relevant factors associated with youth that we first set forth in *Lyle* as mitigating. However, the statute's failure to explicitly state that these factors must be treated as mitigating does not render the sentencing factors unconstitutional. As

we have already noted, our existing juvenile sentencing jurisprudence establishes that a sentencing court must consider the five *Lyle* factors in a mitigating fashion in the juvenile sentencing process, and the consideration of any potential aggravating factors, including the circumstances of the crime, cannot overwhelm the sentencing court's analysis. *See, e.g.*, *Roby*, 897 N.W.2d at 143–47. "We strive to interpret our statutes consistent with our case law." *State v. Carter*, 618 N.W.2d 374, 377 (Iowa 2000). In this case, we interpret the sentencing factors of Iowa Code section 902.1(2)(*b*)(2)(a)–(v) consistent with our caselaw to require sentencing courts to apply the statute according to our juvenile sentencing jurisprudence as laid out in this opinion.

Further, we reject Zarate's overly broad interpretation of our holding in *Null* that children cannot be held to the same standard of culpability as adults in criminal sentencing. Under Zarate's interpretation, it would be unconstitutional for a sentencing judge to consider any aggravating factors or the nature of the crime. This interprets our holding far too broadly. *See Null*, 836 N.W.2d at 75. Nothing in the federal or state juvenile sentencing jurisprudence prevents sentencing courts from considering additional and/or aggravating factors beyond the factors established in *Miller*, as Zarate contends. In *Miller*, the Supreme Court stated that the sentencing court may consider "the nature of the[ ] crimes," not just "age and age-related characteristics." 567 U.S. at 489, 132 S. Ct. at 2475. In *Ragland*, we held "the possibility of rehabilitation" was one of five sentencing factors, though not the only one to consider, 836 N.W.2d at 115 n.6 (quoting *Miller*, 567 U.S. 478, 132 S. Ct. at 2468), in contrast to Zarate's argument that rehabilitation should be the primary focus of juvenile sentencing. In *Seats*, we expounded upon these factors to provide sentencing courts with certain

factors it must consider as mitigating. 865 N.W.2d at 556–57. Yet we never barred the sentencing court from considering additional or aggravating factors. *Id.* at 555–57. Zarate himself noted in his reply brief that "[t]he court never limited what characteristics could be considered, it just stated that 'the typical characteristics of youth . . . are to be regarded as mitigating, not aggravating factors.'" (quoting *Null*, 836 N.W.2d at 75).

The fact of the matter is, "[c]riminal punishment can have different goals, and choosing among them is within the legislature's discretion." *Oliver*, 812 N.W.2d at 646 (quoting *Graham*, 560 U.S. at 71, 130 S. Ct. at 2028). While the goal of deterrence carries less weight in the juvenile sentencing realm, it still has some weight depending on the circumstances of each case. *See, e.g., Roby*, 897 N.W.2d at 142; *Lyle*, 854 N.W.2d at 399. Nevertheless, Zarate's request that we hold the use of additional and/or aggravating factors beyond the mitigating youth-related factors first established in *Miller* is unconstitutional would impede the legislature's discretion and ability to promote goals for the criminal punishment of juvenile offenders other than rehabilitation.

The sentencing court's ultimate goal is to decide which sentence "will provide maximum opportunity for the rehabilitation of the defendant, and for the protection of the community from further offenses by the defendant and others." Iowa Code § 901.5. For a sentencing court to adequately meet this goal, the relevant information in the sentencing calculation may include aggravating factors. Otherwise, it would become seemingly impossible for the state to rebut the presumption "that the judge should sentence juveniles to life in prison with the possibility of parole unless the other factors require a different

sentence" in order for the sentencing court to impose any minimum term of imprisonment before parole eligibility. *Seats*, 865 N.W.2d at 555.

While Zarate has improved his life during his time in prison, and may now be less culpable than other juvenile offenders given his circumstances, other juvenile offenders may still require incapacitation to prevent recidivism, or may require a longer sentence due to their culpability. The factors enumerated in Iowa Code section 902.1(2)(*b*)(2) will assist the sentencing court in recognizing these differences between juvenile and adult offenders. Additionally, it will assist the sentencing court in balancing the competing goals of punishment and provide sentencing courts with a variety of case-specific factors to help them appropriately take these differences and goals into account when prescribing sentences. This creates a truly individualized sentencing hearing. Overall, "the Code in general [for juvenile sentencing] is replete with provisions vesting considerable discretion in courts to take action for the best interests of the child." *Roby*, 897 N.W.2d at 141.

Ultimately, "[t]he constitutional analysis is not about excusing juvenile behavior, but imposing punishment in a way that is consistent with our understanding of humanity today." *Lyle*, 854 N.W.2d at 398. The sentencing factors enumerated in Iowa Code section 902.1(2)(*b*)(2) meet this constitutional analysis by taking into account youth-related factors, while also recognizing that not all juvenile offenders are capable of rehabilitation or reintroduction into the community within a set term of years. More importantly, the listed factors provide the necessary individualized sentencing process for juvenile offenders by allowing sentencing courts to consider a wide array of factors on a case-by-case basis to craft an individualized sentence for each juvenile offender. Therefore, we affirm the district court on this issue with the additional

mandate that the typical factors associated with youth as set forth in *Lyle* must be considered mitigating and that the circumstances of the crime or other aggravating factors may not overwhelm the mitigating factors.

**C. Zarate's As-Applied Challenge.**   Zarate argues we should vacate his sentence because the resentencing court inappropriately considered the sentencing factors under Iowa Code section 902.1(2)(*b*)(2) in a manner that allowed the circumstances of his offense to overwhelm the sentencing analysis.   On our review of the district court's resentencing decision, we conclude the district court abused its discretion by imposing a mandatory minimum sentence of ten additional years of imprisonment based on the sentencing judge's belief that there "should be [a] minimum period of time [for imprisonment] for somebody that takes the life of another individual, whether that person is a juvenile or an adult."

As we held in *Roby*, our abuse of discretion standard for sentences that are within the statutory limits "is not forgiving of a deficiency in the constitutional right to a reasoned sentencing decision based on a proper hearing."   897 N.W.2d at 138.   We have repeatedly stressed the constitutional mandate that juvenile offenders must receive an individualized hearing that takes into account the *Lyle* factors in a mitigating fashion.   *See, e.g., id.* at 143–47.   We have also maintained that "the presumption for any sentencing judge is that the judge should sentence juveniles to life in prison with the possibility of parole for murder unless the other factors require a different sentence."   *Seats*, 865 N.W.2d at 555.   After all, "most juvenile offenders should not be sentenced without parole eligibility.  A sentence of incarceration without parole eligibility will be an uncommon result."   *Roby*, 897 N.W.2d at 147.

In this case, the district court deprived Zarate of his right to a truly individualized hearing that appropriately took into account the mitigating factors of his youth. We agree that the district court allowed the circumstances of Zarate's offense to overwhelm its analysis. Rather than starting from the necessary presumption of life with the possibility of parole, the sentencing judge allowed the nature of Zarate's offense to taint his analysis by imposing a mandatory minimum sentence of imprisonment due to his belief that there should be a minimum term of imprisonment for anyone who commits murder, regardless of their age at the time of the offense.

"[I]f a sentencing court fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only appropriate factors but nevertheless commits a clear error of judgment" a discretionary sentencing ruling may be an abuse of discretion. *Id.* at 138 (quoting *People v. Hyatt*, 891 N.W.2d 549, 578 (Mich. Ct. App. 2016)). Here, the sentencing judge had a predisposition to a mandatory minimum before parole eligibility for anyone who commits murder and inappropriately allowed this predisposition to accord improper weight to the nature of Zarate's crime when considering the necessary sentencing factors. Consequently, the sentencing judge failed to appropriately consider the relevant sentencing factors when he resentenced Zarate. As such, the sentencing judge did not provide Zarate with the constitutionally required individualized sentencing process that he is entitled to receive. Notably, since Zarate's resentencing took place on December 28, 2015, the sentencing court did not have the benefit of our holdings in *Sweet* and *Roby* to help guide its analysis. In light of these subsequent opinions, we must vacate Zarate's sentence and remand for a

resentencing that is consistent with our current juvenile sentencing jurisprudence and this opinion.

## IV. Conclusion.

The only portion of Iowa Code section 902.1(2) that is unconstitutional under the Iowa Constitution is section 902.1(2)(*a*)(1), which gives the district court the sentencing option of life imprisonment without the possibility of parole for juvenile offenders convicted of first-degree murder. The remainder of the sentencing options set forth in Iowa Code section 902.1(2)(*a*), and the sentencing factors listed in Iowa Code section 902.1(2)(*b*)(2)(a)–(v), are constitutional under the Iowa Constitution. However, for the aforementioned reasons, we vacate the sentence of the district court and remand for a resentencing that is consistent with our current juvenile sentencing jurisprudence and with this opinion.

**DISTRICT COURT SENTENCE VACATED AND CASE REMANDED.**

Cady, C.J. and Waterman and Mansfield, JJ. join this opinion. Hecht, J. files a concurring opinion in which Wiggins, J. joins. Appel, J. files a separate concurring opinion.

**HECHT, Justice (concurring specially).**

I agree with the majority's determination that the sentence imposing a minimum term of incarceration must be vacated. Although I reach the same result as the majority, my rationale for doing so is different. For the reasons stated in my concurrence in *State v. Roby*, 897 N.W.2d 127, 149 (Iowa 2017) (Hecht, J., concurring specially), I believe a mandatory minimum term of incarceration for a juvenile offender is categorically prohibited by article I, section 17 of the Iowa Constitution. Whether imposed by legislative mandate or by a sentencing court, the constitutional infirmity of mandatory minimum sentences for juvenile offenders is the same in my view. The timing of Rene Zarate's parole, if any, from his life sentence should be left to the board of parole, the entity in the best position to discern whether he has shown maturation and rehabilitation.

Wiggins, J. joins this special concurrence.

**APPEL, Justice (concurring specially).**

I respectfully concur in the result only in this case.

First, I do not believe a judicially imposed twenty-five-year mandatory minimum sentence without possibility of parole for a juvenile offender passes constitutional muster. As will be pointed out below, such an approach is inconsistent with observations made in *State v. Lyle,* 854 N.W.2d 378 (Iowa 2014). In *Lyle*, we declared "[a]fter the juvenile's transient impetuosity ebbs and the juvenile matures and reforms, the incapacitation objective can no longer seriously be served" and the mandatory sentence becomes a "purposeless and needless imposition of pain and suffering." *Id.* at 400 (quoting *Coker v. Georgia*, 433 U.S. 584, 592, 97 S. Ct. 2861, 2866 (1977) (second quote)).

The mandatory sentence in the current case extends until the offender is forty-two years old, well beyond the time at which juvenile character is formed. It is inconsistent with the humane underpinnings of *Graham v. Florida*, where Justice Kennedy eloquently wrote about the role of hope for a meaningful life for a juvenile offender. 560 U.S. 48, 79, 130 S. Ct. 2011, 2032 (2010) ("Life in prison without the possibility of parole gives no chance for fulfillment outside prison walls, no chance for reconciliation with society, no hope."). And, under *Lyle*, a mandatory sentence significantly beyond the time of maturation for purposes of incapacity is "purposeless and needless." 854 N.W.2d at 400 (quoting *Coker*, 433 U.S. at 592, 97 S. Ct. at 2866).

Second, I have come to the conclusion that predicting the future course of a juvenile offender, as psychiatrists have repeatedly warned us, is simply not possible with any degree of accuracy. *See, e.g.*, *Roper v. Simmons,* 543 U.S. 551, 573, 125 S. Ct. 1183, 1197 (2005); Alex R.

Piquero, *Youth Matters: The Meaning of* Miller *for Theory, Research, and Policy Regarding Developmental/Life-Course Criminology*, 39 New Eng. J. on Crim. & Civ. Confinement 347, 356–57 (2013); Laurence Steinberg & Elizabeth S. Scott, *Less Guilty by Reason of Adolescence: Developmental Immaturity, Diminished Responsibility, and the Juvenile Death Penalty*, 58 Am. Psychologist 1009, 1014–16 (2003). Time and time again, professional organizations have repeatedly warned judges that prediction of the future course of an offender generally, and a youthful offender more particularly, is really impossible. *See* Elizabeth Cauffman et. al., *Comparing the Stability of Psychopathy Scores in Adolescents Versus Adults: How Often Is "Fledgling Psychopathy" Misdiagnosed?*, 22 Psychol. Pub. Pol'y & L. 77, 80, 88 (2016) (presenting American Psychological Association research showing that the majority of juveniles diagnosed with psychopathy are misdiagnosed, because psychopathic traits are most often transient). We should not expect judges to be any better at it than professionally trained psychiatrists. Indeed, I simply do not understand what equips judges to be better at making the prediction than experts. Instead of imposing mandatory minimums through an unreliable judicial guess, the constitutionally sound approach is to abolish mandatory minimum sentences on children and allow the parole board to make periodic judgments as to whether a child offender has demonstrated maturity and rehabilitation based on an observable track record.

**I. Mandatory Minimum Incarceration to Age Forty-Two Is Contrary to *Lyle* Principles.**

I do not believe a twenty-five-year mandatory minimum term, even if imposed by a judge, passes constitutional muster. A juvenile offender who is subject to a term of imprisonment is entitled to a meaningful

opportunity to be heard to demonstrate maturity and rehabilitation. *Miller v. Alabama*, 567 U.S. 460, 479, 132 S. Ct. 2455, 2469 (2012); *Graham*, 560 U.S. at 75, 130 S. Ct. at 2030; *State v. Roby*, 897 N.W.2d 127, 140 (Iowa 2017); *State v. Louisell*, 865 N.W.2d 590, 602 (Iowa 2015); *Lyle*, 854 N.W.2d at 381; *State v. Null*, 836 N.W.2d 41, 75 (Iowa 2013). The majority does not question this general principle. The question, then, is how to apply that principle in this case and in other cases involving juvenile offenders.

Neuroscience has established that the character of a juvenile offender is still being formed until the offender ages into the mid-twenties. *State v. Sweet*, 879 N.W.2d 811, 837 (Iowa 2016); *State v. Seats*, 865 N.W.2d 545, 557 (Iowa 2015); *Null*, 836 N.W.2d at 55; *see also* Beth A. Colgan, *Constitutional Line Drawing at the Intersection of Childhood and Crime*, 9 Stan. J. C.R. & C.L. 79, 85 & n.26 (2013). At that point, character formation has generally been completed.

What do we do with respect to a juvenile offender who has been incarcerated but has reached the point at which character formation has been completed? We answered that question in *Lyle*, 854 N.W.2d 378. There we declared, "After the juvenile's transient impetuosity ebbs and the juvenile matures and reforms, the incapacitation objective can no longer seriously be served" and the mandatory sentence becomes a "purposeless and needless imposition of pain and suffering." *Id.* at 400 (quoting *Coker*, 433 U.S. at 592, 97 S. Ct. at 2866 (second quote)).

As implied in *Lyle*, the timing of the meaningful opportunity to show maturity and rehabilitation is a critical element. *See id.* This is not a new concept. As noted by one observer, the United States Supreme Court in *Rummel v. Estelle*, 445 U.S. 263, 280, 100 S. Ct. 1133, 1142 (1980), cited the prisoner's eligibility for parole after twelve years as a

factor in upholding a sentence from Eighth Amendment challenge. *See* Sarah French Russell, *Review for Release: Juvenile Offenders, State Parole Practices, and the Eighth Amendment*, 89 Ind. L.J. 373, 381 (2014) [hereinafter Russell].

The American Law Institute's Model Penal Code: Sentencing addresses the question of juvenile sentence length. Model Penal Code: Sentencing § 6.11A (Am. Law. Inst., Proposed Final Draft 2017). Under section 6.11A(g), the Model Penal Code provides that "[n]o sentence of imprisonment longer than [25] years may be imposed for any offense or combination of offenses." *Id.* § 6.11A(g). Further, the Model Penal Code recommends a "second look" at juvenile sentences in all cases after ten years, with earlier consideration if warranted by the facts and circumstances. *Id.* § 6.11A(h). The commentary to the Model Penal Code emphasizes that juvenile eligibility for parole should be considered earlier than for adult offenders generally. *Id.* § 6.11A cmt. *h.* The Model Penal Code recognizes that "adolescents can generally be expected to change more rapidly in the immediate post-offense years, and to a greater absolute degree, than older offenders." *Id.*

At the very most, the state may, perhaps, in appropriate circumstances constitutionally impose a mandatory term of imprisonment without possibility of parole on a juvenile offender who commits first-degree murder until the period of character formation is completed, or approximately until the offender's age reaches the mid-twenties. *See* Russell, 89 Ind. L.J. at 409 (urging parole eligibility after ten years of incarceration because "it would be logical to tie the timing of an initial review to when one can expect an individual to have obtained a fully mature brain and a more stable character"). After that point, the state must provide the offender with a meaningful opportunity to show

maturity and rehabilitation. If such a showing can be made, holding an offender for purposes of incapacitation beyond that period is a "purposeless and needless imposition of pain and suffering." *Lyle*, 854 N.W.2d at 400 (quoting *Coker*, 433 U.S. at 592, 97 S. Ct. at 2866).

Thus, under *Lyle* principles, there is no doubt that a twenty-five-year mandatory minimum sentence of a juvenile offender without the possibility of parole is constitutionally excessive under article I, section 17 of the Iowa Constitution. Under this scheme, for instance, a seventeen-year-old offender would not be *eligible* for parole until age forty-two. Such a lengthy prison term without the possibility of parole does not provide the meaningful opportunity to be heard on the question of maturity and rehabilitation at the right time. A juvenile offender should be eligible for parole consideration after the period of character formation and time for meaningful observation, even for serious crimes. To the extent a mandatory minimum sentence may be imposed by the court, it may constitutionally extend only as necessary to ensure complete character formation and provide the state with a substantial opportunity to observe the development of the offender. I would thus vacate the sentence in this case and remand it for resentencing consistent with these principles.

I do not think the constitutionally deficiency is cured by the fact that a judge is dragooned into the decision-making process. Our state trial court judges have many sterling qualities. They consistently strive to be patient, fair-minded, and impartial. They strive to exercise discretionary authority in a thoughtful way, each and every time. But if psychiatrists have declared to the world from the mountain tops that they are ill-equipped to make determinations regarding the prognosis of children who offend, why do we think judges will do a better job? We

should not have the hubris to think judges can, in fact, do a good job with this impossible task, and we should not be so cynical as to knowingly assign an impossible job to them.

Of course, I do not suggest that all juvenile offenders are entitled to release once they are eligible for parole. *See Graham*, 560 U.S. at 75, 130 S. Ct. at 2030; *Sweet*, 879 N.W.2d at 832. In any parole evaluation of a juvenile after a period of imprisonment, the evidence may be ambiguous or may even affirmatively show that the juvenile offender has not demonstrated maturity and rehabilitation. The operating principle, however, is that the juvenile offender must be provided a meaningful opportunity to demonstrate the maturity and rehabilitation necessary to support parole at the time that character formation has been completed.

**II. The Time Has Come for Categorical Rejection of Mandatory Minimums for Juveniles.**

The second aspect of this case that is troubling is the development of a laundry list of factors to be considered by the district court in sentencing juvenile offenders. Our caselaw makes it clear that the vagaries of youth—the immaturity, the failure to appreciate risk, the peer pressure, and the lack of appreciation of consequences of actions—are all mitigating factors. *Roby*, 897 N.W.2d at 145; *Sweet*, 879 N.W.2d at 832–33; *State v. Pearson*, 836 N.W.2d 88, 95 (Iowa 2013); *Null*, 836 N.W.2d at 75. We have further emphasized that the nature of the underlying crime is not to overwhelm the analysis in juvenile sentencing. *Seats*, 865 N.W.2d at 557; *Null*, 836 N.W.2d at 74–75. The legislative laundry list appears to be an effort to legislatively override the approach of these cases.

One approach, of course, is to simply declare that the legislative action of adding factors does not alter the approach in *Seats*, 865 N.W.2d

at 557, *Roby*, 854 N.W.2d at 145, and our other juvenile cases. *See, e.g., Sweet*, 879 N.W.2d at 832–33; *Louisell*, 865 N.W.2d at 602; *Pearson*, 836 N.W.2d at 95; *Null*, 836 N.W.2d at 75. Whether the legislature packages considerations as five factors or fifty factors is of no moment for the purposes of constitutional analysis. Indeed, many of the newly listed factors are redundant and overlapping, and in any case, the number of listed factors does not reflect arithmetically increasing constitutional importance.

Notwithstanding the slicing and dicing of additional factors that are now scattered in the statute, the more verbose legislative formulation has no impact on the constitutionally required approach established in *Seats, Lyle, and Roby*. That approach emphasizes that youth is a mitigating and not an aggravating factor, cautions sentencing courts not to give undue emphasis on the nature of the crime, and establishes that mandatory minimums should be the exception and not the rule in cases involving juvenile offenders.

But, as I noted in my special concurrence in *Roby*, 897 N.W.2d at 150 (Appel, J., concurring specially), if implementation of the principles of *State v. Ragland*, 836 N.W.2d 107 (Iowa 2013), *Lyle*, *Null*, and *Roby* prove inconsistent, confusing, difficult, or unworkable, it may be necessary to move to a more categorical approach utilized in *Sweet*, 879 N.W.2d at 839. I believe the time has come to extend the categorical approach in *Sweet* to all statutory minimum sentences imposed by judges on juvenile offenders. Instead, with respect to juvenile offenders, consideration of whether the offender demonstrates maturation and rehabilitation should be left to the parole board.

What would the process look like if we applied *Sweet* to categorically ban minimum sentences for juvenile offenders? A

meaningful opportunity to demonstrate maturation and rehabilitation implies at least two requirements.[6]  First, a meaningful opportunity to demonstrate maturation and release must occur no later than after the completion of character formation.  Consideration for parole only when the juvenile offender reaches forty or fifty years of age is not timely.

In addition, the offender must have a meaningful opportunity to demonstrate rehabilitation and maturation.  The focus of any meaningful opportunity must be rehabilitation and maturation of the offender.  Further, the offender must have an opportunity to present substantive evidence to the parole board on rehabilitation and maturation.  It would be premature at this time, however, to outline in detail precisely what a meaningful opportunity to be heard on the issue would look like, but it must be a broad enough channel to allow the offender a fair opportunity to make a case.[7]  Of course, the parole board would be under no obligation to release offenders when the offender has failed to make the case for rehabilitation and maturation.

### III.  Conclusion.

For the above reasons, I would reverse the judgment of the district court and remand for a vacation of the mandatory minimum sentence in this case.

---

[6]I note that some authorities suggest that if the state is to provide juvenile offenders with a meaningful opportunity for reform, the offender must be incarcerated in "a correctional setting that promotes healthy psychological development." Elizabeth Scott et al., *Juvenile Sentencing Reform in a Constitutional Framework*, 88 Temp. L. Rev. 675, 712 (2016).

[7]There is a growing body of legal literature addressing the question.  *See generally* Megan Annitto, Graham*'s Gatekeeping and Beyond: Juvenile Sentencing Reform in the Wake of* Graham *and* Miller, 80 Brook. L. Rev. 119, 134 (2014); Beth Caldwell, *Creating Meaningful Opportunities for Release:* Graham*,* Miller *and California's Youth Offender Parole Hearings*, 40 N.Y.U. Rev. L. & Soc. Change 245, 257 (2016).