# IN THE COURT OF APPEALS OF IOWA

No. 19-0562
Filed March 4, 2020

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**RUBEN DEASES,**
     Defendant-Appellant.
_____

Appeal from the Iowa District Court for Story County, Bethany J. Currie,

Judge.

Ruben Deases, initially sentenced as a minor for first-degree murder,

appeals his re-sentencing of life in prison with the possibility of parole after serving

a minimum of forty years in prison. **AFFIRMED.**

John L. Dirks of Dirks Law Firm, Ames, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee.

Considered by Vaitheswaran, P.J., and Doyle and May, JJ.

**VAITHESWARAN, Presiding Judge.**

A jury found Ruben Deases guilty of first-degree murder in connection with the 1989 death of his brother's girlfriend. Deases "was seventeen when the murder occurred." *See State v. Deases*, 476 N.W.2d 91, 94 (Iowa Ct. App. 1991). Under then-existing law, Deases was committed to life in prison without parole. This court affirmed his judgment and sentence. *Id.* at 98. The sentencing laws for juveniles convicted of first-degree murder evolved over time, and Deases was eventually re-sentenced to life with the possibility of parole after forty years. On appeal, Deases contends the district court abused its discretion in imposing a term of years prior to parole eligibility rather than granting him immediate parole eligibility as he requested.

## I.     *Background Law and Proceedings*

In 2012, the United States Supreme Court held "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *See Miller v. Alabama*, 567 U.S. 460, 479 (2012). The court did not consider whether "the Eighth Amendment requires a categorical ban on life without parole for juveniles" but stated the court was required "to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* In response, Iowa's governor commuted Deases' sentence to life in prison with the possibility of parole after sixty years.

Deases filed a motion to correct an illegal sentence. He alleged the commuted sentence also was unconstitutional. The district court stayed the proceedings until the issue could be resolved by the Iowa Supreme Court in

pending appeals. The supreme court held the commuted sentence unconstitutional. *See State v. Ragland*, 836 N.W.2d 107, 121 (Iowa 2013) ("[T]he unconstitutional imposition of a mandatory life-without-parole sentence is not fixed by substituting it with a sentence with parole that is the practical equivalent of a life sentence without parole."). The court later held life without parole for juveniles categorically unconstitutional under the Iowa Constitution. *See State v.* Swee*t*, 879 N.W.2d 811, 839 (Iowa 2016) ("[W]e adopt a categorical rule that juvenile offenders may not be sentenced to life without the possibility of parole under article I, section 17 of the Iowa Constitution.").

Then came *State v. Lyle* 854 N.W.2d 378, 400 (Iowa 2014), *as amended* (Sept. 30, 2014). The court there held "all mandatory minimum sentences of imprisonment for youthful offenders . . . unconstitutional under the cruel and unusual punishment clause in article I, section 17 of our constitution." *Id.* The court enumerated several factors "to be used by the district court . . . on resentencing":

> (1) the age of the offender and the features of youthful behavior, such as "immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) the particular "family and home environment" that surround the youth; (3) the circumstances of the particular crime and all circumstances relating to youth that may have played a role in the commission of the crime; (4) the challenges for youthful offenders in navigating through the criminal process; and (5) the possibility of rehabilitation and the capacity for change.

*Id.* at 404 n.10 (citations omitted). The court emphasized that they were "all *mitigating factors*, and they cannot be used to justify a harsher sentence." *Id.* at 402 n.8; *see also State v. Rob*y, 897 N.W.2d 127, 144 (Iowa 2017) ("First, the factors generally serve to mitigate punishment, not aggravate punishment."); *State*

*v. Seats*, 865 N.W.2d 545, 556 (Iowa 2015), *holding modified by State v. Roby*, 897 N.W.2d 127 (Iowa 2017) ("The sentencing judge should consider these family and home environment vulnerabilities together with the juvenile's lack of maturity, underdeveloped sense of responsibility, and vulnerability to peer pressure as mitigating, not aggravating, factors."); *State v. Null*, 836 N.W.2d 41, 75 (Iowa 2013) ("[T]he typical characteristics of youth, which include immaturity, impetuosity, and poor risk assessment, are to be regarded as mitigating, not aggravating factors.").

The legislature subsequently enacted Iowa Code section 902.1(2)(a) (2019), prescribing the following sentences for juvenile defendants convicted of first-degree murder:

> (1) Commitment to the director of the department of corrections for the rest of the defendant's life with no possibility of parole unless the governor commutes the sentence to a term of years.
> (2) Commitment to the custody of the director of the department of corrections for the rest of the defendant's life with the possibility of parole after serving a minimum term of confinement as determined by the court.
> (3) Commitment to the custody of the director of the department of corrections for the rest of the defendant's life with the possibility of parole.

The supreme court held the first option unconstitutional. *See State v. Zarate*, 908 N.W.2d 831, 843 (Iowa 2018) ("[W]e hold that Iowa Code section 902.1(2)(a)(1), which allows the sentencing court to sentence a juvenile offender to life imprisonment without the possibility of parole is unconstitutional."). The court found "the rest of Iowa Code section 902.1(2)(a) . . . constitutional," reasoning that the second and third options "allow[] sentencing courts to craft individualized sentences for each juvenile offender so long as the juvenile offender is first sentenced to life imprisonment with some option for parole eligibility." *Id.* at 844–

46.   The court also upheld the constitutionality of legislatively-prescribed sentencing factors. *Id.* at 849; *see* Iowa Code § 902.1(2)(b)(2)(a)–(v).[1]  However,

---

[1] The provision states:

(2) In determining which sentence to impose, the court shall consider all circumstances including but not limited to the following:

(a) The impact of the offense on each victim, as defined in section 915.10, through the use of a victim impact statement, as defined in section 915.10, under any format permitted by section 915.13.  The victim impact statement may include comment on the sentence of the defendant.

(b) The impact of the offense on the community.

(c) The threat to the safety of the public or any individual posed by the defendant.

(d) The degree of participation in the murder by the defendant.

(e) The nature of the offense.

(f) The defendant's remorse.

(g) The defendant's acceptance of responsibility.

(h) The severity of the offense, including any of the following:

(i) The commission of the murder while participating in another felony.

(ii) The number of victims.

(iii) The heinous, brutal, cruel manner of the murder, including whether the murder was the result of torture.

(i) The capacity of the defendant to appreciate the criminality of the conduct.

(j) Whether the ability to conform the defendant's conduct with the requirements of the law was substantially impaired.

(k) The level of maturity of the defendant.

(*l*) The intellectual and mental capacity of the defendant.

(m) The nature and extent of any prior juvenile delinquency or criminal history of the defendant, including the success or failure of previous attempts at rehabilitation.

(n) The mental health history of the defendant.

(o) The level of compulsion, duress, or influence exerted upon the defendant, but not to such an extent as to constitute a defense.

(p) The likelihood of the commission of further offenses by the defendant.

the court agreed with the defendant that "the district court's consideration of any potential aggravating factors set forth in section 902.1(2)(b)(2)(a)–(v) shall align with our juvenile sentencing jurisprudence so as not to overwhelm the mitigating factors associated with youth, especially the five factors of youth set forth in *Lyle.*" *Zarate*, 908 N.W.2d at 849.

At the end of 2018, Deases contacted the district court to determine the status of his previously stayed resentencing request. The court scheduled and held an evidentiary hearing at which the State and defense each called an expert

---

> (q) The chronological age of the defendant and the features of youth, including immaturity, impetuosity, and failure to appreciate risks and consequences.
> (r) The family and home environment that surrounded the defendant.
> (s) The circumstances of the murder including the extent of the defendant's participation in the conduct and the way familial and peer pressure may have affected the defendant.
> (t) The competencies associated with youth, including but not limited to the defendant's inability to deal with peace officers or the prosecution or the defendant's incapacity to assist the defendant's attorney in the defendant's defense.
> (u) The possibility of rehabilitation.
> (v) Any other information considered relevant by the sentencing court.

Iowa Code § 902.1(2)(b)(2)(a)–(v). Section 902.1(3)(a) further provides:

> 3. a. Notwithstanding subsections 1 and 2, a defendant convicted of a class "A" felony, other than murder in the first degree in violation of section 707.2, and who was under the age of eighteen at the time the offense was committed shall receive one of the following sentences:
> (1) Commitment to the custody of the director of the department of corrections for the rest of the defendant's life with the possibility of parole after serving a minimum term of confinement as determined by the court.
> (2) Commitment to the custody of the director of the department of corrections for the rest of the defendant's life with the possibility of parole.

*Id.* § 902.1(3)(a)(1)–(2).

witness.  Deases also testified briefly.  As noted, the court resentenced him to life in prison "with the possibility of parole after serving a minimum of forty years in prison."

## II.    Analysis

Deases asserts "the court placed undue weight on the nature of the crime and did not adequately balance that with all of the evidence of [his] rehabilitation." Our review of the court's ruling is for an abuse of discretion.  *See State v. Crooks*, 911 N.W.2d 153, 161 (Iowa 2018).

The district court considered the *Lyle* factors as well as the twenty-two factors prescribed by subsection 902.1(2)(b)(2)(a) through (v) and delineated the factors deemed to be mitigating or aggravating.  The court began by acknowledging Deases' age was a mitigating factor notwithstanding his chronological proximity to adulthood.  *See Roby*, 897 N.W.2d at 145 ("[A]ge is not a sliding scale that necessarily weighs against mitigation the closer the offender is to turning eighteen years old at the time of the crime.").  The court next addressed Deases' "[i]mmaturity and failure to appreciate risks and consequences."  After summarizing the trial testimony concerning Deases' plan to have a juvenile commit the crime to avoid the severity of an adult sentence, the court stated,

> The fact the brothers had a conversation about the risks and consequences and decided that a brother under age 18 should do it certainly appears to the Court that [Deases] did appreciate the consequences of his actions, although he may not have known specifically what sentence he faced.  The Supreme Court has directed sentencing courts to consider this as a mitigating factor.  The Court has trouble considering it in mitigation of the offense but will not consider it as an aggravating factor when deciding an appropriate sentence.

The court also considered Deases' intellectual and mental capacity "as mitigating circumstances in this case." As for "[d]uress, influence, familial, and peer pressure," the court stated,

> The Supreme Court has again directed sentencing judges to consider duress, influence, familial, or peer pressure as a mitigating factor, but the Court has serious difficulty in finding this to be a mitigating factor under the specific circumstances of this particular case. Essentially, the Court would have to take [Deases'] self-serving trial testimony at face value, which the jury clearly did not and which the Court does not, having read the transcript. However, the Court will not consider it as an aggravating factor when deciding an appropriate sentence.

Turning to "[f]amily and home environment, including abuse, neglect, drug or alcohol abuse, exposure to violence, lack of supervision, lack of appropriate education, and mental health history," the court found "plenty of mitigating circumstances under this factor."

The court proceeded to the "[t]he circumstances of the crime, nature and severity of the offense, the extent of Mr. Deases' participation, the heinous, brutal, or cruel manner of the murder." After describing the "incredibly horrific" nature of the crime, the court stated,

> The Supreme Court has directed sentencing courts to not allow the aggravating circumstances of the murder overwhelm the mitigating factors associated with youth. However, the Supreme Court has also held that nothing prevents me from considering additional or aggravating factors relevant to the particular case. The Court finds it appropriate to consider the sequence of events immediately after the murder as aggravating circumstances. [Deases] sexually abused [the woman's] body after she was dead. Although [another brother] cut off [the woman's] head, [Deases] helped clean up by placing her head into the garbage bags, going with [the brother] to dispose of the head, driving over it, and throwing it into a ditch near a gravel road. He also accompanied [the brother] and helped get a TV box from a friend to hold the rest of [the woman's] body, helped [his brother] tie her up, wrap her body in garbage bags, tie those bags with more ropes, and went with [his brother] to dump [the

woman's] body in a lake. The head was found and remained unidentified for several days before the body was located.

The court also addressed "[t]he possibility of rehabilitation, previous efforts at rehabilitation, the extent of a juvenile delinquency history, and the likelihood that [he would] commit further offenses." The court catalogued the evidence on this factor including the opinion of the State's expert that "that Mr. Deases' behaviors are consistent with psychopathy which cannot be rehabilitated" and the opinion of the defense expert that "antisocial personality traits tend to abate in a person's 40s." However, the court did not make a credibility finding as to either expert.

Finally, the court examined, Deases' "demonstration of remorse and acceptance of responsibility." The court stated,

> At the trial, Mr. Deases denied and minimized his involvement. At the original sentencing hearing, Mr. Deases again said he had not killed or intended to kill [the woman]. He denied responsibility and pointed his finger at his brother . . . as the sole person responsible for the murder. Mr. Deases has had nearly 30 years to reflect on his conduct and his participation. He has had enough time while incarcerated to improve himself and he has apparently chosen not to do so. Since the U.S. Supreme Court announced the change in the law in 2012 or at least since 2013 when the Iowa Supreme Court announced that all the juveniles sentenced under the previous version of the Code would be resentenced, Mr. Deases has known this day was coming, and he could have put himself in the best position for the Court's consideration. The Court can find nothing in Mr. Deases' actions or statements to be a mitigating factor. Specifically, he again today denies that he was involved and that he was only present and that he was there after the fact. There is no remorse in that statement. He stated, I'm the one doing everything in a cell, unquote, which shows the Court that he's sorry that he got caught, not that he's sorry he committed this murder.

Deases argues the district court's focus on "the circumstances immediately following the offense rather than those a few minutes or hours earlier" did not lessen the concerns expressed by the United States and Iowa Supreme Court in *Roper* and *Null* that the heinous nature of a crime could cause courts to overlook

the factors of youth. He notes that "all of the *Lyle* factors serve to mitigate [his] proper punishment."

We agree *Lyle's* direction to treat "the circumstances of the crime" as mitigating was broad enough to encompass the circumstances immediately following commission of the crime. Applying these factors in *Roby*, the court stressed that the circumstances of the crime "do not necessarily weigh against mitigation when the crime caused grave harm or involved especially brutal circumstances." 897 N.W.2d at 146. The court admonished "judges [not to] necessarily use the seriousness of a criminal act, such as murder, to conclude the juvenile falls within the minority of juveniles who will be future offenders or are not amenable to reform." *Id.* The court noted "delinquency is normally transient, and most juveniles will grow out of it by the time brain development is complete." *Id.* at 147.

Recently, however, the court applied the circumstances of the crime and the prospects of rehabilitation as aggravating factors. In *Goodwin v. Iowa District Court for Davis County*, 936 N.W.2d 634, 647 (Iowa 2019), the court stated, "Our sentencing courts can and should consider the heinous nature of the crime in evaluating whether to impose a mandatory minimum sentence." With respect to the prospects of rehabilitation, the court cited an expert opinion that the juvenile would benefit from rehabilitative programs available in a prison setting. *Id.*

We are left with a legal landscape that requires resentencing courts to treat the *Lyle* factors, including the circumstances of the crime and the prospect of rehabilitation, as mitigating, yet allows courts to treat the identical statutory factors as aggravating. *See* Iowa Code § 902.1(2)(b)(2)(h), (u). The district court carefully

navigated this fraught landscape in addressing the circumstances of the crime. We conclude the court did not abuse its discretion in evaluating this factor.

Deases next takes issue with the opinion of the State's expert. He notes that "[h]er entire opinion of him was based upon her review of the transcripts of his trial, which occurred more than 30 years ago," and "much of her testimony is called into question by scientific evidence recently cited by the Iowa Supreme Court."

Deases' critique of the expert's reliance on the trial transcript is well taken. *See Roby*, 897 N.W.2d at 145 (noting age and features of youthful behavior "is most meaningfully applied when based on qualified professional assessments of the offender's decisional capacity" and citing the use of "validated assessment methods" and "an expert's 'developmental and clinical knowledge and experience to integrate [the] information'") (citing Elizabeth Scott et al., *Juvenile Sentencing Reform in a Constitutional Framewo*rk, 88 Temp. L. Rev. 675, 696–97(2016)). The expert, in no uncertain terms, based her opinion on the trial evidence. She stated,

> I did not personally evaluate [Deases], therefore, I cannot provide any definitive diagnosis. What I am saying is that the behavior that was described at the trial, the behavior described in the trial testimony for which he was found guilty by a jury of his peers is very consistent with what we see and think about in psychopathy.

She also stated,

> It is my opinion that the severity of the crime and the demonstrated lack of remorse and empathy not only for the victim but for other people involved in the crime are much more consistent with a psychopathic presentation as opposed to . . . an adolescent who is at this unbalanced stage of brain development and makes a bad choice in the moment.

Despite not having performed "standardized tests" on Deases, she said her opinion "would have been the same" had she performed those tests, "given the severity of the behaviors."

The expert's focus on the crime as established in the trial transcript appears at odds with precedent, including the recent case of *Bonilla v. Iowa Board of Parole*, 930 N.W.2d 751, 772 (Iowa 2019). There, the court stated, "The focus of *Graham-Miller* is on the dynamic evolving character of the juvenile offender, not on the static characteristic of the offense." *Bonilla*, 930 N.W.2d at 772 (citing *Miller v. Alabama*, 567 U.S. 460, 471–73 (2012); *Graham v. Florida*, 560 U.S. 48, 68–69 (2010)). The court further stated, "[T]he focus of the decision whether to release a juvenile offender on parole under *Graham-Miller* cannot be the heinousness of the underlying offense." *Id.* Although *Bonilla* addressed the role of the parole board rather than the district court on resentencing, the court cited sentencing precedent, stating, "[F]rom the beginning of the development of its recent application of cruel and unusual punishment concepts to juveniles, the Supreme Court has emphasized that '[a]n unacceptable likelihood exists that the brutality or cold blooded nature of any particular crime would overpower mitigating arguments based on youth.'" *Id.* (quoting *Roper v. Simmons*, 543 U.S. 551, 573 (2005)).

While we question the propriety of the State's expert opinion, we note that the district court did not rely on her testimony to the exclusion of other record evidence. The court merely summarized her testimony and that of the defense expert without finding one or the other more credible. And the court independently weighed the *Lyle* and statutory factors. *Cf. State v. Majors*, 897 N.W.2d 124, 127 (Iowa 2017) (noting court misapplied the factors). Under these circumstances, we

conclude the court did not abuse its discretion in considering the opinions of the State expert.

In sum, we discern no abuse of discretion in the court's thorough ruling. *See State v. Crooks*, 911 N.W.2d 153, 173 (Iowa 2018) ("The record reveals the sentencing court addressed a variety of factors in response to the evidence and argument presented by Crooks, including those *Miller/Lyle* factors identified by Crooks. We find no abuse of discretion."). We affirm Deases' sentence of life with the possibility of parole after forty years.

**AFFIRMED.**

Doyle, J., concurs; May, J. concurs specially.

**MAY, Judge.** (concurring specially)

As the majority explains in its detailed and thoughtful opinion, the district court's sentence was supported by the record and consistent with existing precedent. I wholeheartedly agree there was no abuse of discretion and we should affirm.

Still, I respectfully submit we should not question the propriety of the State's expert, Dr. Jill Kelderman. Deases criticizes Dr. Kelderman's methodology because, although she reviewed the transcript from Deases's trial and gained additional information concerning Deases's performance in confinement, Dr. Kelderman did not meet with Deases personally. Yet it is beyond dispute that Dr. Kelderman is a highly-qualified pediatric neuropsychologist. In her testimony, Dr. Kelderman was open about her methods and what conclusions those methods could—or could not—support. For example, on cross-examination, she conceded: "I did not personally evaluate him, therefore, I cannot provide any definitive diagnosis." Still, based on her expertise and the information available to her, she was able to opine that Deases's behavior had been "very consistent with what we see and think about in psychopathy." And, she explained, her opinions were "not significantly" affected by the fact she had not conducted a personalized assessment:

> Q. Did you perform any standardized tests on Mr. Deases? A. I did not. I did not have the opportunity to do that.
> Q. Do you think that that affects your opinion in this case? A. Not significantly. I think it might have fine tuned, maybe refined some ideas about his level of intellectual functioning and other aspects of cognition. I think at the end of the day—because I did think about this issue of not being able to conduct an assessment. I think at the end of the day given the severity of the behaviors, multiple behaviors—it was pretty profound evidence in my opinion of what we

just talked about in terms of evidence of psychopathy, and so for that reason—you know, while the standardized assessment in this particular situation may provide a few more refined—more refined information about his cognitive profile, at the end of the day I think the general opinion would have been the same.

I have no reservations about the sentencing judge's ability to analyze this kind of testimony and determine what weight—if any—it should receive. *State v. Guise*, No. 17-0589, 2018 WL 2084846, at *9 (Iowa Ct. App. May 2, 2018) (McDonald, J., dissenting) (noting "[t]he sentencing court acts within its core competency in receiving the evidence, determining the appropriate inferences, if any, to be drawn from the evidence, and determining the weight of the evidence"), *majority decision vacated*, 921 N.W.2d 26 (Iowa 2018). And I have found no case that prescribes any particular methods—such as in-person assessments— pediatric neuropsychologists *must* employ before they can testify at a sentencing hearing. Nor have I found any case that prohibits the use of certain methods— such as the review of trial transcripts—by testifying pediatric neuropsychologists. While it is true that *State v. Roby*, 897 N.W.2d 127, 146–48 (Iowa 2017), emphasized the value of "expert testimony" in sentencing and, indeed, made reference to some tools available to experts (e.g., "social maturity scales"), I do not believe *Roby* or any other case has dictated what methods a pediatric neuropsychologist must or must not employ when forming expert opinions.

Likewise, I have found no case that dictates what *opinions* a pediatric neuropsychologist may reach or present in a sentencing hearing. In any event, I am not concerned by the fact that Dr. Kelderman's opinions focused substantially on Deases's criminal actions. As *Goodwin v. Iowa District Court* made clear, "sentencing courts can and should consider the heinous nature of the crime." 936

N.W.2d 634, 647 (Iowa 2019). And I have no fear that evidence of a defendant's crime—however heinous—will improperly "overpower mitigating arguments based on youth," as the *Roper v. Simmons* court put it. 543 U.S. 551, 573 (2005). The *Roper* court's concerns were about *jurors* in death-penalty cases. 543 U.S at 573. In my view, those concerns have considerably less relevance to our judges. Iowa's sentencing judges are regularly called upon to consider all kinds of terrible circumstances, including the heinous details of defendants' crimes. And they are regularly called upon to balance those troubling details against all of the other evidence and arguments presented—mitigating or otherwise—as they determine what sentence will "provide maximum opportunity for the rehabilitation of the defendant" as well as "protection of the community from further offenses by the defendant and others." Iowa Code § 901.5 (2019). These are, indeed, central duties for a sentencing judge. *See id.* We can and should rely on our judges to perform these duties properly as they "administer justice according to the law." *Id.* § 63.6.

I will end where I should have begun—with the Iowa Constitution itself. As Justice McDonald recently noted, "There is nothing in the text of the Iowa Constitution, as originally understood, that prohibits the imposition of a minimum sentence on a juvenile offender." *Goodwin*, 936 N.W.2d at 649 (McDonald, J., specially concurring). Likewise, nothing in the text of the Iowa Constitution, as originally understood, casts doubt on the propriety of Dr. Kelderman's testimony. Nor should we.