# IN THE COURT OF APPEALS OF IOWA

No. 23-0690
Filed April 10, 2024

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**CHAD CHAPLINE,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Bremer County, Chris Foy, Judge.

A juvenile criminal defendant appeals his sentence for second-degree sexual abuse. **SENTENCE VACATED AND REMANDED FOR RESENTENCING.**

Martha J. Lucey, State Appellate Defender, and Josh Irwin, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellee.

Considered by Greer, P.J., and Ahlers and Buller, JJ.

**BULLER, Judge.**

Seventeen-year-old Chad Chapline pled guilty to second-degree sexual abuse after he and a compatriot repeatedly sexually assaulted a teenage girl while brandishing a knife. The district court sentenced Chapline to twenty-five years in prison with a mandatory minimum of eight years and four months before parole eligibility. Among other claims, Chapline contends the sentencing court failed to address constitutionally required juvenile-sentencing factors. We agree, vacate the sentence imposed, and remand for resentencing.

## I.        Background Facts and Proceedings

Three teens—Chapline, N.O., and M.H.—ran away from a residential treatment center near Waverly. While hiding out in a treehouse by a football field, Chapline "started to touch" N.O., who struggled, screamed, and cried. Chapline directed M.H. to "hold her down and cover her mouth" while Chapline sexually assaulted her; the two then "switched roles" and M.H. assaulted N.O. During the assaults, Chapline and M.H. brandished a pocketknife and screwdriver and—in Chapline's words—told N.O "we didn't want to use them but would if we had to." Chapline emphasized the sharpness of the pocketknife by cutting the wooden boards in the treehouse with it.

Chapline and M.H. "took turns" sexually assaulting N.O. over two days. They penetrated her anus and vagina with their penises and hands, forced her to perform oral sex and a "handjob," and they performed oral sex on her—all against her will. Chapline and M.H. estimated they raped N.O. at least five times.

The three teens then went to Walmart to use the store's public Wi-Fi. N.O. managed to contact her mother and said Chapline and M.H. were holding her against her will and threatening her with weapons.

Police found the three teens in the jewelry department and arrested them. They spoke with Chapline, M.H., and N.O. separately. Chapline and M.H. eventually confessed, and N.O. disclosed the multi-day assault. Chapline also described how he had sexually assaulted other girls before N.O. and used threats to keep them from reporting.

The Bremer County Attorney charged Chapline with two counts of second-degree sexual abuse, class "B" felonies in violation of Iowa Code sections 709.1 and 709.3 (2022), and one count of false imprisonment, a serious misdemeanor in violation of Iowa Code section 710.7. As part of a plea agreement, Chapline pled guilty to one count of second-degree sexual abuse with open sentencing in exchange for dismissing the remaining charges.

Before sentencing, the Department of Correctional Services filed a presentence investigation (PSI) report that documented communication from Chapline's adoptive parents and his time in treatment facilities, shelters, and behavioral health units. The PSI also included a psychosexual evaluation that noted Chapline "denied the offense" during the evaluation and "stated he did not [sexually abuse N.O.] and indicated that she is lying."

At sentencing, Chapline asked the court to impose no mandatory minimum on his term of incarceration before parole eligibility. The State sought a mandatory minimum of seventeen-and-a-half years. The district court sentenced him to

twenty-five years in prison with a mandatory minimum of eight years and four months. Chapline appeals.

## II. Standard of Review

Our review is for abuse of discretion, but "it is not forgiving of a deficiency in the constitutional right to a reasoned sentencing decision based on a proper hearing." *State v. Roby*, 897 N.W.2d 127, 138 (Iowa 2017). We are required to reverse if the district court did not consider one of the five constitutionally-required juvenile-sentencing factors before imposing a mandatory minimum. *State v. Majors*, 897 N.W.2d 124, 127 (Iowa 2017).

## III. Discussion

Chapline seeks relief alleging the district court failed to consider all the required juvenile-sentencing factors, while also considering unproven conduct as an aggravating factor. We find the juvenile-sentencing-factors issue dispositive.

Under our supreme court's precedent, a sentencing court must "expressly consider the [juvenile-sentencing] factors before imposing *any* mandatory minimum sentence on a juvenile offender." *State v. Crooks*, 911 N.W.2d 153, 172 (Iowa 2018) (citing *State v. Lyle*, 854 N.W.2d 378, 404 n.10 (Iowa 2014)). The five factors are:

> (1) the age of the offender and the features of youthful behavior, such as immaturity, impetuosity, and failure to appreciate risks and consequences;
> (2) the particular family and home environment that surround the youth;
> (3) the circumstances of the particular crime and all circumstances relating to youth that may have played a role in the commission of the crime;
> (4) the challenges for youthful offenders in navigating through the criminal process; and
> (5) the possibility of rehabilitation and the capacity for change.

*State v. Zarate*, 908 N.W.2d 831, 841 (Iowa 2018) (edited for readability).

Chapline makes a few substantive challenges regarding the constitutional factors, but we focus on his claim the sentencing court did not address the fourth factor, concerning the challenges youthful offenders face in navigating the criminal process. To give the full picture of the reasons given for sentencing, we reproduce the court's explanation verbatim:

> Mr. Chapline, this is a difficult case for the court. I mean, it's clear your actions caused lots of harm. Lots of damage. Another thing that's challenging for me is the fact that because—for various reasons you have been in a lot of different placements where the whole purpose of the placement was to try to get you help, address needs that you have, whether it's for mental health purposes, emotional purposes or what have you, and it would not appear to the court that this treatment or these various programs have had much positive impact on you.
>
> You know, . . . the offense that you've pled guilty to, where . . . you engaged in un-consensual, nonconsensual, forcible sex with [N.O.], another person participated. Whether it was necessarily at your urging or guidance or not, you were both there, you both knew what was happening, you both participated. You used a knife.
>
> You know, my personal belief is that everyone can change, everybody's got something positive to contribute to society. But your case challenges that belief, Mr. Chapline.
>
> I mean, I believe that there's something positive you can contribute, but I don't believe you're in a position where we can safely—or we can leave—that I can leave the door open for you to be taken back into the community anytime soon.
>
> You know, the PSI, the psychosexual evaluation, talk about different factors that are concerning to me. You know, the fact that with the psychosexual evaluator, you were denying even committing the offense, that you'd done anything wrong. That causes the court concern that . . . a lot needs to happen before we can hope for your rehabilitation. And if you're not acknowledging with the evaluator that you did these acts, the court doesn't have much hope about your prospects for successfully going through sex offender treatment program.
>
> Because of my concerns of the treatment, the programming you've already received, and the fact that it doesn't appear to have had much impact, I don't sense any . . . I don't sense any remorse from you, I don't sense that you have an appreciation for . . . the

impact your actions have had on [N.O.], . . . and I am concerned about your likelihood to reoffend, I do think that that's something that's come through on the psychosexual evaluation.

You know, often with a young person who has committed a sex offense, looking at the circumstances, you can ascribe it to sort of somebody being impetuous, getting caught up in the heat of the moment and making poor choices that way. What you did here . . . doesn't really have any of those what I would consider perhaps mitigating factors.

This looks to me like . . . there was a plan in place, you . . . enlisted or at least encouraged one other person to participate with you. You used a knife. . . . [T]his wasn't a single act. It was, I believe, ongoing act over the course of at least a day. So there's just different things that tell me you thought about this. You planned it. You were focused on some type of gratification for you without much concern for how it might impact your victim.

So it would be my belief that . . . some period of prison time is required before I feel you should even be considered for parole. I think the State's recommendation is probably too harsh. What I'm wrestling with right now is the right balance. If you were [thirty] years old and committed this crime, I'd have no qualms about the sentence that the law requires.

You're not [thirty] years old. You're [seventeen], going to be [eighteen], and a five-year prison sentence is a, you know, more than a quarter of your life to this point. So, you know, my view is every year of prison I'm hoping will have more of an impact on you than it might have on somebody who is older, more hardened. But I have to say, Mr. Chapline, you've shown kind of . . . a cold disposition here . . . in the proceedings we've had. And it would be the court's opinion that you should serve at least one-third of the indeterminate sentence before you can be considered for parole. So eight-and-one-third years.

Chapline asserts the sentencing court "did not say a word about" the fourth factor. The State contends the court implicitly considered this factor when it discussed how Chapline was "placed in different programs with opportunities for rehabilitation that did not work." But Chapline's past failures speak to the fifth factor (prospects for rehabilitation), not the fourth factor (challenges navigating the justice system). *See, e.g.*, *Goodwin v. Iowa Dist. Ct.*, 936 N.W.2d 634, 647 (Iowa 2019) ("This [fourth] factor recognizes that juveniles are typically less capable than adults

at navigating the legal process."); *Roby*, 897 N.W.2d at 146 (describing the fourth factor as "the legal incompetency associated with youth"). We agree with Chapline's assessment; the fourth factor went unaddressed by the district court—expressly or otherwise. *See Crooks*, 911 N.W.2d at 171–72 (quoting *Lyle*, 854 N.W.2d at 404 n.10).

We vacate the sentence imposed and remand with directions to re-sentence Chapline after considering the required juvenile-sentencing factors. *See, e.g.*, *id.* at 173. We express no opinion on whether application of the constitutional factors will yield the same or a different sentence on remand.

**SENTENCE VACATED AND REMANDED FOR RESENTENCING.**